106 584
123 313
123 314
24a 125
106 584
27a 477
106 594
131 414
106 584
138 67
106 584
139 517
145 166
106 584
151 188
106 584
160 319
106 584
157 163
106 584
57a 95
106 584
165 293
106 584
177 127
106 584
90a 2
106 584
189 3347
189 3451
f189 5463
93a 5345
106 584
204 3 28

## HENRY W. NEWBERRY *et al.*

### *v.*

## ELIPHALET W. BLATCHFORD *et al.*

*Filed at Ottawa September 27, 1882—Rehearing denied March Term, 1883.*

1. APPEALS—*freehold involved.* On a bill filed by certain devisees in a will against the executors, for a present division and distribution of the estate, both real and personal, and for a construction of the will as to the time of the distribution, a freehold is involved, and an appeal lies directly from the circuit court to this court.

2. SAME—*of a second appeal—what matters involved.* A second appeal in the same case, when the first decision covers the merits of the controversy in all its bearings, brings up only the subsequent proceedings had after the mandate of the court of last resort was sent down.

3. REVERSAL *with directions—practice in the court below.* Where a decree has been reversed by this court on the merits, finding that there is no equity in the bill, and the complainant is entitled to no relief, and the cause is remanded for further proceedings in conformity with the opinion of this court, nothing remains to be done by the court below but to dismiss the bill. In such case that court has no authority to allow any amendment to the bill.

4. SAME—*effect of disregarding the mandate of this court.* Although it may be the duty of the court below, in such case, to dismiss the bill upon motion, on the filing of the mandate of the Supreme Court, which it refuses to do, yet if it afterward, on the final hearing, does dismiss such bill, although an amended bill has been allowed to be filed, there is no cause of complaint.

5. FORMER ADJUDICATION—*in the Supreme Court—how far conclusive—and in what manner to be reviewed.* A decision of a case on its merits by an appellate court is final as to the matters decided, and conclusive upon the parties upon a second appeal or writ of error in the same case. And a re-statement of his case by a complainant after the merits of the controversy have been determined against him by a court of last resort, although his amended bill may contain some new matter that would not have been impertinent in the original bill, will not give such party such a standing in court as to enable him to demand another adjudication of his cause on a second appeal.

6. The Supreme Court has no power to review a previous decision in the same case, except on petition for rehearing, presented in conformity with its rules. After a rehearing has been had the court will not re-open the discussion of the same questions previously determined, on the application of the same parties, especially when no new or different questions are presented.

7. SAME—*when binding on one not a party.*    While the rights of no one are to be barred or cut off by a decree until he has had his day in court, yet when a decision is made by this court in a case in which it has jurisdiction, touching the construction of a will, which is binding upon the parties before the court, it will be conclusive as to the same question of law when presented by another party interested in the same fund, under the same will.

8. SAME—*res judicata, how presented.*    On a second appeal in the same case to the Supreme Court, the record presenting the same questions decided in the first appeal, the question of *res judicata* may be presented and considered without any formal plea.

9. PARTIES—*bill asking advice as to administration of a public charity—the Attorney General as a proper or necessary party.*    In all bills asking the advice or direction of a court of equity as to the administration of a public charity, and especially where waste or mismanagement is apprehended, or where the decree will affect the interests of the *cestuis que trust,* the Attorney General, or other public officer whose duty it may be to have a care in such matters, is a proper party, either as complainant or defendant. Courts not infrequently hesitate to decree concerning a public charity, unless the general law officer representing the donees is a party in some way. Exceptional cases are, where the charity or bounty is in the hands of trustees charged by the donor specifically with its management for the *cestuis que trust.*

10.    A testator provided in his will that upon the happening of a certain contingency his entire estate should be divided into two equal portions by his executors, and one-half thereof devoted to a public library, and the other half given to certain relatives, as his devisees, and a bill was filed by certain of his heirs, claiming to be the donees of one-half of the estate, for a division and distribution of their shares, and for a construction of the will as to the right to an immediate distribution, but not asking any advice of the court as to the management of the bounty to the public, and not intimating that the trustees who were specifically charged with its management were in any manner wasting or mismanaging the fund:    *Held,* that there was no necessity to have made the Attorney General a party to the bill.

11.    Had it appeared the trustees were misappropriating the trust fund, it would no doubt have been the duty of the Attorney General to interpose for its preservation.    It is only where the trustees having charge of the fund unite in an abuse of their trust, and there is no one having a right to sue in his own name concerning it, as is the case with regard to a public charity, that the suit must of necessity be instituted by the Attorney General.

12.    There is a distinction where trustees of a charity are appointed by the donor, and where none are appointed, but there is a devise immediately to charitable uses.    In the latter case there can be no decree unless the Attorney General be made a party, but otherwise where trustees are appointed by the donor.

13. CROSS-BILL—*when proper.* One object to be attained by a cross-bill is to discover evidence to defend against that which is alleged against the defendant, and another is to secure affirmative relief, not obtainable on his answer, touching the matter in the original bill.

14. SAME—*when not allowed.* A defendant in chancery will not be permitted to file a cross-bill when he seeks no discovery, and no affirmative relief is sought different from that sought in the original bill. If it is filed in violation of such rule, it may properly be stricken from the files. The practice will not permit a defendant to file a cross-bill claiming the same thing may be done that is sought by the original bill. A demurrer would lie to such a cross-bill, or it might be dismissed on motion.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. WIRT DEXTER, Messrs. McCAGG, CULVER & BUTLER, Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. JAMES McCARTNEY, Attorney General, for the appellants:

An appeal lies to this court directly, because a freehold is involved in the litigation, and also because the State is a party. *Carter* v. *Penn*, 99 Ill. 390; Laws of 1879, sec. 88, p. 222.

The defence of *res judicata* must be set up by plea or answer, and can not be raised by demurrer to the bill. *Chicago, Burlington and Quincy R. R. Co.* v. *Lee*, 87 Ill. 461.

To make a matter *res judicata* there must be an identity of subject matter and of the cause of action, of the persons and parties, and in the quality of the persons for or against whom the claim has been made. Freeman on Judgments, sec. 252; Bouvier's Law Dic. 465; *Miller* v. *McMannis*, 57 Ill. 156.

As to the rule *stare decisis*, and its use and proper application, counsel cited and quoted largely from *Headen* v. *Rust*, 39 Ill. 192; *Bowers* v. *Green*, 1 Scam. 19; *Matlett* v. *Butcher*, 41 Ill. 383; *Butler* v. *Van Weickle*, 4 Hill, 461; *Pratt* v. *Brown*, 3 Wis. 609; *Towle* v. *Furnie*, 15 N. Y. 425; *Leavitt* v. *Blatchford*, 17 id. 533; *Leavitt* v. *Mariatt*, 6 Ohio, 78; *Williams* v. *Gibbes et al.* 17 How. 257; *Woolsey* v. *Judel*, 4

Duer, 490; *Shields* v. *Perkins,* 2 Bibb, 231; *In re South Dur-
ham Co., Smith's case,* Law Rep. 11, Ch. Div. 579; *Frink
et al.* v. *Darst,* 14 Ill. 304; *Gwin et al.* v. *McCarroll,* 1 S. &
M. 371; *San Francisco* v. *Spring Valley Water Works,* 48
Cal. 493; *Callendar's Admr.* v. *Keystone Mutual Life Ins. Co.*
23 Pa. St. 471.

This court has held that upon a second appeal it would
not reëxamine questions settled upon the first appeal, and
would consider only such errors as were assigned upon that
portion of the record since the first appeal. *Hollowbush* v.
*McConnel,* 12 Ill. 204; *Ellston* v. *Kennicott,* 52 id. 274;
*Cook* v. *Norton,* 61 id. 285; *Reed* v. *West,* 70 id. 479; *Kings-
bury* v. *Buckner,* id. 514; *Rising* v. *Carr,* id. 596; *Chicago
and Alton R. R. Co.* v. *The People,* 72 id. 82; *Tuttle* v.
*Garnett,* 74 id. 444; *Hough* v. *Harvey,* 84 id. 309; *Smith* v.
*Brittenham,* 94 id. 624. But there must be identity of the
parties, of the issues, and of evidence, as there was in all the
cases cited.

That the Attorney General is a proper and necessary party
to every suit which may affect a public charity, is well settled
by the authorities. Story's Equity Pleading, sec. 222; Tudor
on Charitable Uses, 161; *Parker* v. *May,* 5 Cush. 336; *Jack-
son* v. *Phillips,* 14 Allen, 579; *Society* v. *Society,* 55 N. H.
463; *Chamberlain* v. *Stearns,* 111 Mass. 267; *Well Beloved,
etc.* v. *Jones,* 1 Sim. & Stu. 40; *Cook* v. *Duckenfield,* 2 Atk.
563; Rev. Stat. 1874, chap. 14, p. 163; *Going* v. *Emery,* 16
Pick. 119; *Harvard College* v. *Society for Promoting Theo-
logical Education,* 3 Gray, 280; *Attorney General* v. *Dublin,*
38 N. H. 459; *Heuser et al.* v. *Harris,* 42 Ill. 431.

The decision rendered upon the former hearing, in the
absence of the Attorney General, could not bind him, and
therefore was not conclusive upon any of the parties to the
suit. *Scott* v. *Bennett,* 1 Gilm. 646; *Lietze* v. *Clabaugh,* 59
Ill. 136; *Deniston* v. *Hoagland,* 67 id. 265; *Ridgeway* v.
*Underwood,* id. 421; *McCall* v. *Lesher,* 2 Gilm. 48.

Messrs. ISHAM & LINCOLN, for the appellees:

A second appeal brings before this court only the proceedings subsequent to the mandate, and does not authorize an inquiry into the merits of the original decree. The only question is, did the lower court err in carrying into effect the mandate sent down by this court. *Brown* v. *McArthur*, 7 Wheat. 78; *Corning* v. *Troy Factory*, 15 How. 466; *Hough* v. *Harvey*, 84 Ill. 310; *Hollowbush* v. *McConnel*, 12 Ill. 203; *Washington Bridge* v. *Stewart*, 3 How. 413; *Kingsbury* v. *Buckner*, 70 Ill. 515; *Southard* v. *Russell*, 16 How. 547; *Roberts* v. *Cooper*, 20 id. 467; *Diversey* v. *Johnson*, 93 Ill. 547; *Clayes* v. *White*, 83 id. 540.

The construction of the will having been adjudicated against the complainants, the court below should have dismissed the bill. *Wadhams* v. *Gay*, 83 Ill. 250; *Boggs* v. *Willard*, 70 id. 315; *Puterbaugh* v. *Elliott et al.* 22 id. 158; *Watkins* v. *Bliss*, 2 Dickens, 701.

Messrs. BOUTELL & WATERMAN, also for the appellees:

That the Attorney General was not a necessary party merely because a legacy is given to a public charity, see Mitford & Tyler's Equity Pleading, 20; *Chitty* v. *Parker*, 4 Brown, C. C. 38; 1 Daniell's Chancery Pr. 138; *Attorney General* v. *Warner*, 2 Swanst. 291; *Morrill* v. *Lawson*, 4 Viner, 501.

The cross-bill filed by the Attorney General makes substantially the same case presented in the original bill, which has been decided.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The question whether this court has jurisdiction in the first instance to hear the appeal in this case has been fully considered. A majority of the court are of opinion a freehold is involved in the case, and therefore the appeal lies directly from the circuit court to this court. In that conclusion the writer does not concur, being of opinion the case is one in-

volving only the construction of a will, and that no freehold is involved. No discussion of either position taken will be attempted. It is deemed sufficient to state the conclusion reached by the majority of the court after mature consideration.

This case now comes before this court on a second appeal. The substance of the original bill, and the questions of law there determined concerning the matters in contention, are fully stated in the opinion of the court then delivered. (*Blatchford* v. *Newberry*, 99 Ill. 11.) Reference is made to that case for a statement of the facts necessary to an understanding of the questions of law discussed. As there stated, it is a case involving the construction of a will, and the clause construed has relation to the time of the division and distribution of the estate of Walter L. Newberry, deceased. It was determined it was the plain purpose of the testator, as expressed in his will, no division or distribution of his estate should be made until after the termination of the three lives mentioned, and only at a time after the whole estate should have fallen into the trustees, under his will, disincumbered of all further uses for the daughters of the testator, or his widow. The conclusion, reached after mature consideration, was, that by a correct reading of that paragraph of the will the period for the division and distribution of the testator's estate had not arrived, and would not arrive until the death of his widow, who had survived both of his daughters, and was still living. The circuit court had construed the will differently, and decreed a division and distribution of the estate, and on account of that error its decree was reversed, and the cause remanded for further "proceedings in conformity" with the opinion of this court. On a petition filed for that purpose, conforming to the rules of this court in such matters, a rehearing was allowed, and the cause placed back on the docket for re-argument. But after another full and exhaustive discussion of the questions presented by the

record, a majority of the court adhered to the conclusion reached on the former hearing, and caused the opinion then delivered to be refiled, as containing a full expression of the views entertained by a majority of the court.

On the *remittitur* from this court being filed, had the circuit court conformed to the practice, as stated by this court in *Wadhams* v. *Gay*, 83 Ill. 250, and had it proceeded in conformity with the opinion of this court, as it was directed to do, it would seem nothing remained for it to do but to dismiss the bill. What other proceeding would conform to the opinion of this court in that behalf? The construction there given to the will, holding the period of distribution had not yet arrived, was a final decision of the case on its merits, and it is not perceived under what authority any amendment could thereafter be made to the bill. But this branch of the case will be further remarked upon as the discussion goes on.

After the mandate of this court was filed in the circuit court, complainants obtained leave from the court to amend their bill, which was done. There is some difficulty in ascertaining what new matter was introduced into the bill other than making the Attorney General of the State a defendant, for the reason the amended bill took the form of a restatement of the entire case. Giving to the amended bill a careful consideration, it is not discovered any new matter is introduced other than stating more fully facts concerning the personal history of the testator, and the situation and character of his property, which it was thought might aid in ascertaining the true interpretation of that clause of the will the court was asked to construe. What are called new facts, alleged in the amended bill, throw no light on the principal question involved, viz., the construction of the will. Notwithstanding the amendment to the bill, it is in all material respects the same record that was before the court on a former appeal. A restatement of his case by a complainant, after the merits of the controversy have been determined

against him by a court of last resort, although his amended bill might contain some new matter that would not have been impertinent in his original bill, will not give a party any such standing in court as would enable him to demand another adjudication of his cause on a second appeal. That would enable a party to experiment with the court, and would certainly introduce a most pernicious practice, not heretofore tolerated in this State.

It will be noticed, on inspection, that both the original and amended bills present only that clause of the testator's will relating to the final period of distribution of his estate, for construction. The division of the estate the trustees were asked to make between the heirs of the testator and the donees of the library fund, was a mere incident to the principal relief sought. It would be allowed or denied, as a matter of course, as the will shall be construed one way or the other. It is apparent, then, as respects the question presented by the amended bill, it is identical with that determined by the court in its opinion on the original bill, when it was before this court on the first appeal. A definite construction was then given to that clause of the will about which the whole controversy hinges. As has been seen, it was then determined it was the plain purpose of the testator, as expressed in his will, the final distribution of his estate should not be made until after the death of his widow, in case she should survive his daughters, and that any other construction of his will would be to make a new will for him, instead of construing the one he had made. That decision covered the whole ground, and left nothing further to decide, either on the original or amended bill.

It is obvious that construction of the testator's will is conclusive on complainants in the original bill. It is a decision of a court of last resort, having jurisdiction of the parties and the subject matter of litigation—definitive in its character, comprehending the whole merits of the controversy, and

under the known rule of law such a decision is obligatory upon and conclusive as to the same parties everywhere, and in this court as well as in all other courts. It is not necessary to look elsewhere than to the decisions of this court for authorities declaring this doctrine. They are full to the point a second appeal in the same case, where the first decision covers the merits of the controversy in all its bearings, brings up only the subsequent proceedings had after the mandate of the court of last resort was sent down. *Hollowbush* v. *McConnel,* 12 Ill. 203; *Reed* v. *West,* 70 id. 479; *Smith* v. *Brittenham,* 94 id. 624. It has often been held, as in *Rising* v. *Carr,* 70 Ill. 596, this court has no power to review its previous decisions except on petition for rehearing, presented in conformity with the rules of this court, and that has been done once in this case. It is now useless to ask this court to re-open the discussion of the same questions previously determined, on the application of the same parties, and especially so in view of the fact no new or different questions are presented, so far, at least, as complainants in the original bill are concerned. As to them the discussion must be regarded as forever closed, and the decision adverse to them must stand. The reason for the rule adopted on this subject is well and forcibly stated in *Hollowbush* v. *McConnel,* where it is said: "There must be an end of litigation somewhere, and there would be none if parties were at liberty, after a case has received a final determination of a court of last resort, to litigate the same matter anew, and bring it again and again before the court for its decision." The principle of that case, and the language in which it is expressed, has often been approved in more recent decisions of this court, and notably in *Cook* v. *Norton,* 61 Ill. 285, and in *Ogden* v. *Larrabee,* 70 id. 510. This court will not enter again upon the consideration of the merits of the case, as presented by complainants' bill. This would imply a right in this court to review its previous decision in the same case on a second appeal—a

right it distinctly disclaims.   Complainants have had their
day in court, and they can not, with any show of reason, ask
to have another.   The law forbids it, to the salutary end all
litigation may be confined within certain limits, beyond which
parties may not go.

The insistence, the question of *res judicata*, if made at all,
must be presented by plea in a case like this, has so little in
its support, either in reason or authority, the point made is
not considered of sufficient gravity to require discussion.   It
would be singular, indeed, if a court could not discover the
same record on a second appeal, presented the precise same
question it did on the first appeal, to the same court.

Another branch of the case will now be considered.   De-
fendants have assigned cross-errors, upon which they ask the
judgment of the court.   First, the court below erred in not
dismissing complainants' bill, on the motion of defendants,
made on filing in that court the mandate of the Supreme
Court after its former decision; and, second, in allowing
amendments to the bill after such mandate was filed in that
court.   As respects the first cross-error assigned, it would
seem to be sufficient to say, as the fact is, the court did dis-
miss the original and amended bills, although it was not done
until the final hearing, and defendants would hardly have
any just cause for complaint on that score, as a dismissal of
complainants' bills was all their motion contemplated.   The
complications in the case all arise out of the action of the
court, after the mandate of this court was made known to it,
in allowing amendments to the bill.   The rule governing the
practice in such cases would seem to be as well settled in
*Wadhams* v. *Gay,* as any rule can be.   It is as stated in that ·
case, where a cause in chancery has been determined by a
court of last resort upon its merits, the court finding there is
no equity in the bill, and the cause is remanded for further
proceedings in conformity with its opinion, it is the duty of
the court, on receiving the mandate of the Supreme Court,

38—106 ILL.

to dismiss the bill for want of equity, that there may be an end to the matter in litigation,—otherwise there would be a ceaseless round of litigation, lasting as long as the parties would be able to bear the expenses attendant thereon. The repose of society forbids the adoption of any policy that would lead to such results. In the case cited, it was held it was not in conformity with the opinion of the court finding there was no equity in the bill, to permit complainants to dismiss their bill without prejudice, and on account of that error the decree of the circuit court was again reversed. An obvious reason for the decision in that case is, it would permit a renewal of the litigation by the same parties in that or another forum, which would be against the policy of the law. Conforming to this rule, it would seem to have been the duty of the circuit court to have dismissed complainants' bill on receiving the mandate of the Supreme Court to proceed in conformity with its opinion finding the bill had no equity. But the court permitted an amendment of the original bill in matters of statement, and by making a new party defendant, viz., the Attorney General of the State, and afterwards, on demurrer, dismissed the original and amended bills of complainants, and also the cross-bill of the Attorney General, filed on behalf of the People of the State. That decision, both complainants and the Attorney General insist was error.

It is not perceived on what ground complainants may find fault with the decision of the circuit court dismissing their own bill and the cross-bill on behalf of the People of the State. As has been considered, so far as they are concerned their rights had been conclusively determined by the Supreme Court on their first appeal. The general doctrine running through all the books on this subject, that when a cause has been once determined by a court of last resort, in a decision covering the merits of the case, the unsuccessful party can not have another hearing on a second appeal as to the

same matters, is not questioned by counsel for complainants; but in some way, because the Attorney General, as is now said, was a necessary party to their bill, in order to the efficient protection of the rights of the People of the State in a public and munificent charity, and was not made a party, it is insisted the whole case will again be opened as to all questions made, not only to hear the cause of the People, but as to complainants also. The position taken is assumed by complainants for the first time on this their second appeal. No suggestion was made by either party on the first appeal as to the want of proper parties, either as complainants or defendants.

But if it be assumed the name of the Attorney General was inadvertently omitted as a defendant to the original bill by accident or mere oversight, the difficulty does not lie in ascertaining the rule of law on this subject, but in its application. The doctrine no doubt is, that in all bills asking the advice or direction of court of equity as to the administration of a public charity, and especially where waste or mismanagement is apprehended, or where the decree would affect the interests of the *cestuis que trust,* the Attorney General, or other public officer whose duty it may be to have a care in such matters, is a proper party, either as complainant or defendant, and courts not infrequently hesitate to decree concerning a public charity unless the general law officer representing the donees is a party in some way. Exceptional cases are, where the charity or bounty is in the hands of trustees charged by the donor specifically with its management for the *cestuis que trust.* There is much subtle learning in the books on this subject, but it is not deemed necessary to restate it, as it would tend in no considerable degree to enlighten the present inquiry. What application the doctrine contended for by counsel can have to the case before the court is not understood. Neither by their original or amended bill do complainants ask any advice of the court as to the adminis-

.tration or management of the bounty of the testator to the People of the State. It was a matter in which they had no rightful authority to intermeddle, nor did they assume to do so. All they desired was a division of the trust fund between the library fund and themselves, as devisees under the will. The trust fund was then in the hands of trustees under the will of the donor, and who were specifically charged with its management. There was no intimation, either in the original or cross-bill, the trustees were in any manner misappropriating or wasting the fund over which they had been given control, and there was therefore no necessity for the watchful interference by the law officer of the People of the State. Had it appeared the trustees were misappropriating the trust fund, it would no doubt have been the duty of the Attorney General to interpose for its preservation. It is only where the parties having charge of the fund unite in an abuse of their trust, and there is no one having a right to sue in his own name concerning it, as is the case with regard to a public charity, the suit must, *ex necessitate rei*, be instituted by the Attorney General. In this case the trustees having charge of the trust under the will of the testator were before the court, and had anything been necessary, either to the management or preservation of the fund, the court would have compelled them to adopt suitable measures to that end. Following closely what was said by the Chancellor in *Monill* v. *Lawson*, 4 Viner, 500, Pl. 11, Mr. Daniell, in his work on Chancery Practice, formulates the rule in such cases with as much accuracy as is attainable in such matters, where he says: "It seems that there is a distinction where trustees of the charity are appointed by the donor and where no trustees are appointed, but there is a devise immediately to charitable uses. In the latter case there can be no decree unless the Attorney General be made a party, but otherwise where trustees are appointed by the donor. Therefore, where a bill was filed to establish a will, and to perform several trusts, some of them

relating to charities in which some of the trustees were
plaintiffs, and other trustees and several of the *cestuis que
trust* were defendants, an objection because the Attorney
General was not made defendant was overruled, it being
considered that some of the trustees of the charity being de-
fendants, there might be a decree to compel the execution of
the trusts relating to these charities." The facts of the case
now before the court seem to bring it exactly within the rule
stated, and as the same is declared in cases that might be
cited from courts entitled to the highest consideration.

It is to be observed the relief asked by complainants was
personal as to themselves, and was to ascertain whether the
period for the division and distribution of the estate of the
testator had arrived. Had it been determined it had arrived,
the division of the estate between the devisees and the donees
of the library fund the trustees were desired to make, would
have followed as a matter of course, as an incident to the
principal relief granted. No advice or direction was asked
by complainants as to the administration or management of
the library fund. How, then, the Attorney General was
either a proper or indispensable party to their bill is not ap-
prehended. That which complainants by their bill asked to
be done could not, by any possibility, affect the testator's
bounty to the public in any manner that made his defence
necessary.

But conceding the Attorney General was a proper party to
the bill, it would be as co-complainant, and not as defendant.
Complainants and the Attorney General all desired to have
the same thing done, viz., a construction of the will of the
testator, holding that the period for the division and distri-
bution of his estate had arrived. Although no imperative
rule of law required it, there would have been no impropriety
in joining the Attorney General as a co-complainant in the
original bill. Yet no necessity existed for adopting that
course, as the very interest he would have represented was

necessarily involved in the same interest represented by counsel for complainant, and it may be added it was argued and illustrated with unusual ability. It was not possible to separate the subject matter of the suit into distinct and separate interests, so as to make one decree for the devisees under the will and another and different one for the donees of the library fund.

It is said to be a principle underlying our system of jurisprudence worthy to be constantly observed, that the rights of no one are to be barred or cut off by a decree until he has had his day in court. An application of that doctrine is sought to be made on behalf of the omitted party in this case. Should it be conceded the *cestuis que trust* represented by the Attorney General are not barred by the former decree because they have had no day in court, and should he file a bill in their behalf to ascertain whether the time for the division of his estate, by the terms of the testator's will, had arrived, what would be the result? Assuredly it would be said that precise question was before this court in *Newberry et al.* v. *Blatchford et al.* 99 Ill. 11, and it was there decided the period for the division and distribution of the estate had not arrived, and would not arrive until after the death of the testator's widow, who had survived both of his daughters, and was still living. As the former decision must stand as to complainants in that case, it will be conclusive as to the same question of law when presented by another party interested in the same fund under the same written instrument. It would involve a palpable absurdity it would be desirable to avoid, should it be held that, as to the devisees named by the testator to take a moiety of his estate, the period of distribution would be at the death of his widow, and as to the donees of the library fund the time for a division of the estate would be at the termination of the widow's life estate. As was said in the former opinion of the court, "there was to be no piece-meal distribution of the estate,—there was to

be one final, complete division and distribution of the entire estate at once."

On being made a defendant, the Attorney General filed an answer, in which most of the principal allegations of the bill were admitted to be true, and as to such allegations as were not admitted or denied, he disclaimed having any knowledge concerning them. What office such an answer could perform is not quite clear, unless it was deemed necessary that defendant might have the same decree for himself that complainants asked for themselves. It may be it was thought the answer of the Attorney General would give him a standing in court that would enable him to maintain a cross-bill. With that view it was wholly unavailing. It will be seen the cross-bill was filed in violation of the well established chancery practice. A definition of a cross-bill, contemporaneous with its origin, is, it is a mode of defence. One object to be attained by its use is, to discover evidence to defend against that which is alleged against the defendant, and another is to secure affirmative relief not attainable on his answer touching the matters in the original bill. The cross-bill in this case was for no purpose the law permits such a bill to be used. No discovery was sought and no relief was asked that was not attainable, if at all, on his answer. This is stating no new rule of practice. It was decided by this court, as long ago as in *Morgan* v. *Smith*, 11 Ill. 194, a defendant will not be permitted to file a cross-bill when his rights are fully disclosed in his answer in response to the allegations of the bill, and might be fully protected by the court on the hearing of the original bill, and the cross-bill of defendant was held to have been properly stricken out of the record, because it was in violation of proper practice. That is precisely the case here. Whatever rights the *cestuis que trust* had in the library fund were fully disclosed by the answer the Attorney General made to the original bill, and could be

as well protected in that way by the court as in any other. A cross-bill was wholly unnecessary for that purpose.

There is another mode, equally satisfactory, by which the same conclusion may be reached. It will be perceived the cross-bill of the Attorney General asked the same thing—a particular construction of the testator's will—to be done as did the original bill against him, and nothing more. It is not understood the practice in chancery will permit a defendant to file a cross-bill praying the same thing may be done as is sought to be accomplished by the original bill. A demurrer would lie to such a cross-bill, or it might be dismissed on motion, as was done in *Morgan* v. *Smith.* It is for the reason the law abhors a useless thing or proceeding. The relief would be granted to defendant, if at all, upon his answer admitting the bill to be true, for the relief complainants seek is exactly what he desires shall be granted. It would be extreme folly for the court to decree the same thing a second time on a cross-bill.

But the decision may be placed on a yet broader ground— one having nothing in it savoring of technical objection, and going directly to the merits of the whole case as presented by the Attorney General, without regard to the form in which the case comes before this court. The most favorable view that can be taken of the cross-bill exhibited by the Attorney General is to treat it as an original bill in the nature of a bill for review, for error appearing on the face of the record, by one who was not a party, and therefore not bound by the decree. Even in that view it would be sufficient to refer to the former opinion of the court as being conclusive of the same question of law arising on the same clause of a written instrument, and concerning the same identical interests. This court will not stultify itself by giving a construction to the will of the testator against the view taken by complainants in their bill, and then giving an exactly opposite and contrary construction to the same clause of the will on the bill.

of another party, when both parties bear the same relation to the matter in suit. Such a decision would lack that stability that should characterize all judicial proceedings.

There is no error in the record, and the decree of the circuit court will be affirmed.

*Decree affirmed.*

Separate opinion by Mr. JUSTICE WALKER:

I still hold, as I have ever done, that the time for distribution arrived at the death of the last daughter of the testator. But a majority of the court held, when the case was first argued, and again on re-argument, that distribution could not be had until the death of Mrs. Newberry. I think a proper respect for the majority requires of me that I accept that decision as final and irrevocable, and to cease struggling for my views, and to regard the decision as *stare decisis.*

That Newberry had the right to give his property to whom he chose can not be denied, and it is not, nor can it be, questioned that in doing so he could impose such terms, conditions and limitations as he saw proper. When he gave this fund for the founding of a library, he imposed terms and conditions that must be complied with before it can be applied to the purpose designated, and this court has more than once held that the time has not arrived for its application, nor can it be made until after Mrs. Newberry's death. He had the right to select the agents of the public to hold and control the fund, under such restrictions as he chose to impose, and this he did. He did not confer a particle of power on the Attorney General to intermeddle with or control this fund, nor did he authorize the public to interfere, nor did he give them the slightest present interest in the fund. Their interest is contingent on the death of Mrs. Newberry. It can not, or will not, become a public fund before her death, and certainly the public or its officers can have no control over it before that time, if then. Newberry

selected the agents or trustees for the public, as he had the undoubted right to do, and he imposed the management of the fund on them, and the court has no power to deprive them of it until the period of distribution shall arrive, unless they shall abuse the trust or endanger the safety of the fund by malconduct or threatened misapplication. No such misconduct being charged, the Attorney General has no legal right to interfere. The will is to them, and to all others, the law by and under which they must act and be controlled.

It is urged that the public have not been represented in this litigation, and it is therefore proper that the Attorney General should be a party to represent the interest of the public. The testator appointed these trustees as the agents of and to represent the public, and they are parties to the suit, and have been heard in the interest of the public.

When the court announces a rule of law on a given state of facts, the same rule is always applied to future cases involving the same facts, whether the parties are the same or not, and notwithstanding the parties were not before the court on the former trial. This is the uniform rule of all courts. This question has been twice decided by the majority of the court, and the Attorney General must be governed by the rule, as he presents precisely the same facts for adjudication.

Mr. JUSTICE DICKEY, dissenting:

Walter L. Newberry died in 1868, leaving a widow and two unmarried daughters. By his will he placed the body of his estate in the hands of trustees, to hold until the death of the last survivor of these three persons, for the purpose of distributing the whole net income annually,—$10,000 to the widow, and the residue to the daughters, or to the survivor thereof. The widow refused to take what was offered to her under the will. The trustees paid the whole income, annually, to the daughters, until one of them died childless, and from that time they paid the whole of the income to the sur-

viving daughter, until her death in 1876.   The will directed
that immediately after the death of the last of these three life
tenants the trustees should divide the estate into two equal
shares, and distribute and apply the same.   The widow still
lives.   The nephews and nieces filed their bill against the
trustees, claiming that by the words of the will the division
was to take place at the end of the last of the three *life estates.*
The trustees refused to divide, and insisted the time for divi-
sion was at the end of the natural life of the last of the three
life tenants.   The circuit court took the view of the original
complainants, and ordered an immediate division and dis-
tribution.   The trustees appealed to this court, and on Feb-
ruary 2, 1880, this court reversed the decree, holding the
time for division, under the will, had not arrived, and would
not arrive until the natural death of the widow, and remanded
the case to the circuit court for further proceedings in accord
with that view.   The Attorney General was not, thus far, a
party to these proceedings, nor did any one pretend to repre-
sent the interest of the public in having the immediate enjoy-
ment of the charity,—of a free public library.   When the case
came back to the circuit court, the original complainants, on
leave, amended their bill, making the Attorney General a
party.   He answered, and then filed a cross-bill against the
original complainants, and against the trustees, insisting that
the time for division came in 1876, when the last daughter
died, and inasmuch as this court had otherwise decided when
he was not a party, he claimed a hearing on that question,
*de novo,* and to that end that the judgment of this court in
that regard be set aside, and the whole subject be heard
anew.   The circuit court, on hearing, dismissed the original
bill and cross-bill.   From this decree the Attorney General
appeals to this court, and the original complainants also
appeal.

   I agree with my brethren in holding that the original com-
plainants can not be permitted to insist that the decision of

this court, of February 2, 1880, was erroneous. They had their day in court on that question, and unless, for the sake of other parties, that judgment be set aside, the original complainants must abide that determination of that question. The public, who are the beneficiaries of the charity providing for a free public library, however, have, in my judgment, never had their day in court, and that public have a right now to be heard on that question, and to have the same considered anew, in the same manner as though no such decision had been made. The Attorney General is the legal representative of that public.

In considering this question I assume that decision to be erroneous. The question must be considered, in view of the fact shown by the record in this case, that after the rendering of the judgment which is relied upon as precluding further consideration, a majority of the judges constituting this court became convinced that the judgment in question was erroneous, and so regard it now. Unless, therefore, there is some clear and well established rule of law which forbids the reconsideration of the questions passed upon in 99 Ill. *supra*, these questions ought to be reconsidered, that the correct rules of law may be applied.

For the purpose of this discussion let it be assumed that the original complainants are barred by the judgment of this court, *supra*, of February 2, 1880. I take the ground that neither the public, nor the Attorney General, who represents the public, are bound by that decision. Neither the public nor the Attorney General were at that time a party to the litigation, either in person or by representation. In fact, no such judgment should have been rendered without the Attorney General as a party to the record. He was, in my judgment, an indispensable party. If so, he was not bound by the judgment as *res judicata*. Nor do I think one single judgment should be regarded as a matter controlling as *stare decisis*.

I can not perceive that, in such case, there would be any stultification of the court in setting aside and overruling a decision on the record confessedly erroneous.

In considering this question, assuming, as we must, that under the will, when legally and properly construed, it became, in April, 1876, the duty of these trustees to the public to divide this estate at once into two equal parts, and without unreasonable delay to apply one-half thereof to the establishment of a free public library, and that they all refused to do so, it follows, necessarily, that they have been violating their duty to the public in the administration of their trust ever since. In such case no other person except the Attorney General can lawfully represent the State in determining the rights of the public.

If the allegations of the bill and cross-bill are true, the surviving descendants of testator's brothers and sister, (the beneficiaries of the one-half, and the public, the beneficiaries of the other half,) were lawfully entitled to the *immediate* enjoyment of their respective shares, and the action of the trustees in denying their right to an immediate distribution of the estate was contrary to the trusts of the will, and was a maladministration of their trust. The suit relates to the administration of the trust. In this controversy the public, as the beneficiaries of one share, had a joint and equal interest with the original complainants; but neither the Attorney General nor the people of the State were made parties, and in the absence of both the case was submitted to the circuit court on demurrer, and a decision was rendered by this court, also in the absence of the people and the Attorney General, defining the rights of both the complainants and the public, and construing and declaring the legal effect of the very clause of the will which provides for the establishment of a public library, and in effect determining that the people of the present generation shall be deprived of the benefits of the charity established by the will. Neither

the trustees, nor their counsel, at any time *assumed* to present the cause of the public, nor did they at any time present or suggest to the court any considerations in support of the asserted rights of the public. On the contrary, their attitude from the first to the last was that of absolute denial of any present rights, either in the complainants or the public, and they called to their aid in maintaining their position able and astute counsel, who supported them by all the arguments their ability or ingenuity could suggest. Their attitude, and that of their counsel, throughout the controversy, was uncompromisingly hostile to the asserted rights of both the original complainants and the public, and neither in the court below, nor in this court, did they suggest the necessity, or even propriety, of having the rights of the public represented.

The cross-bill alleges that "the time has long since elapsed since it became the duty of said trustees to proceed under the terms of said will to divide said estate into two equal parts, and to apply one of said parts to the founding of a free public library, as is provided in said will; yet although it has been demanded of said trustees, before the filing of the original bill in this cause, that they do make such application of the said one-half of said estate, the said trustees have refused, and still do persistently refuse, so to do, or to make any application whatever of any portion of said estate."

It is not denied that the relation of the defendants to the property in controversy is that of trustees, the beneficiaries of the one-half being the complainants in the original bill, and of the other half, the public. Nor can it be denied that this is a suit brought by part of the *cestuis que trust* against the trustees to enforce the trust, and to compel them to perform a duty under the trust which all the trustees deny and refuse to perform, and that the suit relates to the administration of the trust. It relates to a breach of trust by the trustees. Nor can it be denied that the public, as the bene-

ficiaries of one-half of the estate, had an equal and joint inter-
est with the original complainants in the subject matter of
the controversy and in the question involved,—whether the
time had arrived, under the will, for dividing the estate.
The public was jointly interested with the original complain-
ants in that question. They are interested in that very
question,—in the same manner and in the same degree.

In suits brought by *cestuis que trust* against trustees for
the enforcement of a trust, or to enforce the performance of
a duty by the trustees, the rule is, that all the beneficiaries
are indispensable parties before a decision against the bene-
ficiaries can be rendered. Barbour says: "The *cestuis que
trust* have the equitable ultimate interest to be affected by
the decree, and therefore they are *necessary* parties." (Bar-
bour on Parties, page 529.) The same author says: "In a
suit to enforce a trust, if there are several *cestuis que trust,
all* of them should be made parties to a bill touching the
*common interest.*" (Barbour on Parties, page 525.) Perry
says: "Where the suits are between the trustees and the
*cestuis que trust,* in relation to property, the general rule is,
that *all the trustees* and the *cestuis que trust must* be before
the court, either as plaintiffs or defendants." (Perry on
Trusts, sec. 865.) Hill says: "A suit in respect of a breach
of trust may be instituted by all, or one or more, of the *cestuis
que trust,* as plaintiffs; but if any of the parties beneficially
interested do not join as plaintiffs, they *must* be brought
before the court as *defendants.*" Hill on Trustees, page 810.

The reasons of this rule are plain. It is obvious that in
a suit to enforce rights asserted by the *cestuis que trust* and
*denied* by the trustees, who all refuse to perform the trust,
the trustees can not themselves represent any of the *cestuis
que trust* interested to have the duty performed, and the
*cestuis que trust* themselves, and all of them, must of neces-
sity be parties, to represent and assert their respective inter-
ests. It is also clear that where there are several *cestuis*

*que trust* equally interested in the subject matter of the suit, *all* and each have an equal and the same right to be heard, and one *cestui que trust* can no more properly and justly represent or bind others not before the court, than in any other suit one party can conclude by his appearance others having an equal interest with himself in the subject matter. It seems impossible to deny that under this well settled principle the *cestuis que trust* of the one-half of this estate given to the descendants of the testator's brothers and sister, if the time for division has come, must be regarded as essential parties to *any* suit brought against all the trustees for the enforcement of the trust, or to enforce the performance of the duty which all the trustees refuse to perform. If a suit had been originally brought by the Attorney General without making them parties, it will hardly be contended that the rights of such descendants could have been barred or affected by any decision in such case. It would hardly be insisted that they were represented by the Attorney General representing an independent interest, or that, on that question, they were represented by the *trustees, who denied* the right of these descendants to an immediate division. Nor is it denied that the provision directing the defendants to divide the estate, and to apply one-half of the estate to founding a public library, created a trust, and that the appellees hold the fund devoted to that purpose as trustees, subject to the corresponding right in the public, as *cestui que trust,* to call them to account or to enforce the performance of the trust by their proper representative, the Attorney General.

It would seem to follow, from these indisputable premises, that in a suit brought by the original complainants, as *cestuis que trust,* against all the trustees, to enforce the trust, the other *cestui que trust,* the public, who has an equal interest, is an indispensable party, and must be brought before the court through its representative, the Attorney General, before any decree or judgment by any court can be rendered

which can bind the public, as such *cestui que trust.* In all suits affecting the proper administration by trustees of public or charitable trusts, (since the *cestui que trust*, the public, can not be made a party in person,) it must be represented by the Attorney General, who can be made a party plaintiff or defendant to represent their interest. Barbour on Parties, 444, 468; Hill on Trustees, 714, and authorities cited, *infra.*

It follows, from these principles, that (aside from a few exceptional cases to be noticed hereafter, and in which the *cestui que trust*, if a *natural* person, would *not* be a *necessary* party,) the Attorney General is an indispensable party, either as plaintiff or defendant, to all suits affecting the proper administration by trustees of charitable trusts. And such is the well established rule, by an unbroken line of authority.

In Story's Equity Pleading, sec. 222, the rule is stated thus: "In all cases where the government itself is a party in interest, it is *essential* that the Attorney General, who is the proper public officer of the government, should be made a party, either as plaintiff or as defendant, to protect and assert the interests of the public. Hence it is that in cases of public charities the court always *requires* the Attorney General to be made a party to the suit, because the crown or government, as *parens patriæ*, superintends the *administration* of all charities, and must, in cases of this sort, act by its proper officer, who is the Attorney General."

"Where the crown is either directly or indirectly interested, the Attorney General, or when his office is vacant the Solicitor General, is the party to protect such interests.   *   *   * Where the rights of the crown are only indirectly concerned, as, protecting the interests of persons under its care, as the superintendence of a public trust or charity, the Attorney General *must be a party.*" Mitford's Equity Pleading, 16.

"Any questions affecting charitable trusts may be brought before the court by information, in the name of the Attorney General, or, in some cases, the proceedings may be by bill,

and in that case the Attorney General *must* be made a party to the suit, and the court *will refuse to proceed in his absence.*" Hill on Trustees, 714.

"As *against the trustee* himself, a suit to enforce the trust can only be maintained by the *cestui que trust.* Where the trust is for a public charity, there being no certain persons who are entitled to it so as to be able to sue in their own names as *cestuis que trust,* a suit for the purpose of *having the charity duly administered must be brought* in the name of the Attorney General." Barbour on Parties, 440.

"It is a general rule that in all cases where the government is a party in interest, the Attorney General *should be made a party,* either as plaintiff or defendant, to protect and assert the interests of the public. Hence it is that in cases of public charities the court *always requires* the Attorney General to be made a party to the suit." Barbour on Parties, 468.

Tudor says: "As a general rule, the Attorney General *must be made a party* to every suit by bill when the subject matter is either wholly or *in part* appropriated to charitable purposes." Tudor's Law of Charitable Uses, 161.

*Jackson* v. *Phillips,* 14 Allen, 540, was a bill filed by an *executor* for the construction of a will, containing a bequest to a charitable use. The *trustees* named in the will, and the *heirs,* were made parties defendant to the original bill. By order of the court the Attorney General was made a party defendant. The court say: "In cases of bequests to trustees for charitable uses, the nature of which is described in the will, the chancellor acts in his equity jurisdiction over the trusts, and the prerogative of the king finds its appropriate exercise through his Attorney General in bringing the case before a court of chancery for judicial determination. This duty of maintaining the rights of the public * * * is vested in the commonwealth, and is exercised here, as in England, through the Attorney General. (*Going* v. *Emery,*

16 Pick. 119; *County Attorney* v. *May*, 5 Cush. 338.)   It is upon this ground that in a suit instituted by the trustees of a charity to obtain instructions of the court, the Attorney General should be made a party defendant, as he has been, by order of the court, in this case.   (*Harvard College* v. *The Society for Promoting Theological Education*, 3 Gray, 280; Tudor, 162.)   The power of the king, or commonwealth, thus exercised, is simply to present the question to a court of justice,—not to control or direct its judicial action."

*Society* v. *Society*, 55 N. H. 463, is a case where certain property had been conveyed in trust, the rents to be expended annually by the inhabitants of the town of Orford, "for the support of the gospel."   Two religious societies each claimed to be entitled to the fund.   A bill in chancery having been filed in behalf of one of the societies, in relation to the trust, was dismissed.   Held, that the Attorney General not having been made a party in that suit, the judgment was not binding on him, and the two societies having made a compromise, held that no such compromise, effected by the societies themselves, could be enforced.   It is there said: "The case of *The Attorney General* v. *Dublin*, 38 N. H. 459, was originally commenced in the name of *Abbott et al.*, as plaintiffs, a demurrer having been filed on the ground that the Attorney General ought to have been made a party.   The bill was amended. The same objection, if taken here, would probably have been sustained, and the Attorney General must have been made a party, either plaintiff or defendant.   It is my conclusion that the subject matter of this suit being a public charity, no *final* and *conclusive* settlement can be made unless the State should be represented.   (Story's Eq. Pl. secs. 8, 49, 69, 222.)   It is clear that neither the town of Orford nor the societies have such an interest in the fund as gives them the power to settle anything conclusively in regard to it.   It is said that the suit has been commenced in favor

of that society, against the town of Orford, which has been dismissed on demurrer. It is not directly claimed in the bill that the rights of these defendants have been concluded by that proceeding. If, however, there were such allegations, their effect would be entirely obviated by the fact that the Attorney General was not made a party to that bill, and therefore can not be bound by its results. It seems equally certain that nothing could be done by these societies, by way of compromise or agreement, which could be conclusive."

*Chamberlain* v. *Stearns,* 111 Mass. 267, was a bill filed by trustees, under a will, for instructions as to the validity of an alleged bequest to a charity. The testator's sole heir and residuary devisee was made a party defendant. By order of the court the Attorney General was made a party to the suit, and filed an answer.

In *Female Association* v. *Beekman,* 21 Barb. 568, the court say: "It is a general rule that a suit to enforce a trust can only be maintained by a trustee or the *cestuis que trust.* As against a *third* person, the *trustee* (he being regarded as the representative of the *cestui que trust,*) is the proper party to bring the action. As *against the trustee himself,* the suit can *only* be maintained by the *cestui que trust.* Where the trust is for a public charity, there being no certain persons who are entitled to it, so as to be able to sue in their own names as *cestuis que trust,* a suit for the purpose of having the charity *duly administered must* be brought in the name of the Attorney General. In such a case that officer, as representative of the public, would occupy the relation of *cestui que trust* to trustees."

*Wellbeloved* v. *Jones,* 1 Sim. & Stu. 40, was a bill filed by the trustees of an academical institution to enforce the payment to them of a legacy. It was insisted by the answer of the original defendants that the bequest being for a charity, the Attorney General should be made a party. The vice-

chancellor ordered the Attorney General to be made a party, saying, "the Attorney General must be made a party."

*Kirkbank* v. *Hudson*, 7 Price, 212, was a case wherein a will devised the residue of testator's personal estate to trustees for the perpetual endowment and maintenance of a school. The bill was filed by the next of kin to have this bequest declared void, and for a distribution. The Attorney General was made defendant.

*Cook* v. *Duckenfield*, 2 Atkins, 562, was a case where the testator bequeathed his property in trust, with directions to the trustees that his personal estate should be disposed of "among the widows and orphans of dissenters, and to my poor relations, in such proportions as they shall see fit." A bill was filed by the heir at law against the trustees, and it was held that "the bill must be amended, and the Attorney General, in behalf of the charity to widows and orphans of dissenters, and to testator's poor relations, *must be* made a party. The cause must stand over, and the Attorney General be made a party in behalf of the charity."

In all these cases the trustees of the charity were parties, yet they were not considered the representatives of the public.

In *Overall* v. *Peacock*, a bill was filed by some of the sufferers by a fire against the trustees of a collection made for the sufferers. It was objected at the hearing that the Attorney General ought to have been a party, and that otherwise the decree would *not be conclusive*, and the cause was accordingly ordered to stand over for the purpose of bringing the Attorney General before the court. Mitford's Equity Pleading, 260.

In *Heuser et al.* v. *Harris*, 42 Ill. 431, it was said that the mode of proceeding to enforce a public charity is by "information, in the name of the Attorney General, as an officer of the crown, the king being viewed as the father of the country, and the proceedings instituted for the public good."

Chapter 14 of the Revised Statutes (Rev. Stat. 1874, p. 163,) provides, as to the Attorney General, that one of his duties shall be "to appear for and represent the People of the State before the Supreme Court in each of the grand divisions, in all cases in which the State, or the People of the State, are interested." The statute of Massachusetts was, that the commonwealth's attorney should appear in all cases "in which the commonwealth may be a party, or be interested," and SHAW, Ch. J., construing this statute, says: "I have no doubt that the establishment of the grant or donation for purposes of a general charity, in a suitable and proper case, for the action of a court of equity, is a case in which the commonwealth is interested." *Parker* v. *May,* 3 Cush. 338.

But it is claimed that the present case falls within a supposed exception to the rule, and that the trustees *themselves* have hitherto represented, and, therefore, now represent, the public in this suit. The substance of this proposition is, that in a controversy in which the present right of the beneficiaries (the public) to a fund is asserted by the beneficiaries on the one hand, and denied by all the trustees on the other, and in a suit where the sole object of the public is to enforce the performance by the trustees of certain duties which the trustees refuse to perform and deny to be duties, the trustees *have represented* one of the beneficiaries,—the public,—and by their action in appearing and denying their rights, have concluded them from enforcing the performance of these duties. If the trustees can be said to represent the Attorney General in a suit brought by the beneficiaries of one-half of the fund to enforce the trust, it would seem to follow that if the suit had been brought, as it undoubtedly might have been, by the Attorney General, and the other *cestuis que trust* had not been made parties, their rights would equally have been concluded in the litigation on the same doctrine of representation. This would seem preposterous. If such be the law, why not dispense with the *cestuis que trust,* as parties, altogether? In

a controversy where the attitude of the *cestuis que trust* and
that of the trustees are hostile, and where the very subject
matter of the controversy is an alleged failure to fulfill a
duty imposed upon the trustees in the administration of the
trust,—a duty alleged by all the *cestuis que trust* on the one
hand, and denied by *all the trustees* on the other,—if the
trustees can, in such a suit, represent *part* of the *cestuis que
trust*, why may they not represent *all?* And why is it essen-
tial that any of the *cestuis que trust* shall be parties? Why
may they not all be bound by an *ex parte* proceeding, to which
the trustees alone are parties? I do not understand that it
is contended that those of the *cestuis que trust* who were before
the court represented the others who were not, so as to bind
them. It is not pretended, as I understand, that because
one of the parties in interest has been heard, that cuts off
the rights of the others, equally entitled to a hearing; who
were not made parties, since such a contention would strike
at the fundamental doctrine that only the parties before the
court are bound by the judgment or decree. It is not claimed
that the Attorney General was bound although not before the
court, but that he is bound because he was (as is contended)
in fact represented, and in fact present in court, by his rep-
resentatives, the trustees. In this view it would seem that
the original complainants,—the other beneficiaries,—were,
in the same sense, represented in court by these trustees, for,
as to this question, the trustees are the representatives of one
part of the beneficiaries, in the same sense and to the same
extent as they are for the other beneficiaries. It would seem
to follow, that if a proper proceeding could be suggested, the
supposed principle of law invoked by appellees would enable
the trustees to settle all questions involving alleged breaches
of trust, or touching the enforcement of the performance by
them of any duty under their trusts, in proceedings in which
they would represent both sides in the controversy, and in
which the *cestuis que trust* would not be entitled to be heard

at all. No reasons are presented in support of the position that the trustees were the representatives of the public before this court in 1880, but the position is left to rest upon certain authorities, and the distinction they are *supposed* to establish.

The comment of Mr. Daniell, and the case of *Monill* v. *Lawson*, 4 Viner's Ab. 501, are presented as supporting this position. The case of *Monill* v. *Lawson* is one where a bill is brought by *some of* the trustees, against *other trustees* and several *cestuis que trust*, to establish a will and to enforce the performance of certain charitable trusts. It was there held the Attorney General is not a necessary party. General expressions from Daniell are also relied upon to the effect that there is a difference where trustees of a charity are appointed by the donor and where no trustees are appointed, as to the necessity of making the Attorney General a party. These authorities in nowise conflict with the proposition that (where suit is brought against all the trustees by certain *cestuis que trust*, to enforce the performance by the trustees of a duty claimed to be imposed upon them as such trustees, and which they all deny to be their duty,) *all* the *cestuis que trust* interested in that question are indispensable parties, without which no decree can be rendered by which those not made parties can be concluded or ultimately legally affected. These authorities merely go to sustain the proposition that where a bill is filed by one or more of the trustees against one or more of his or their co-trustees, to compel the performance of a supposed duty under the trust,—or against a stranger, to recover trust property,—in such case the trustee or trustees *asserting the right* of the *cestuis que trust* by filing the bill is regarded as the representative of the *cestuis que trust*, and, in such case, the beneficiaries are not essential parties to the suit. The case at bar does not fall within this exception to the rule. *Neither* of the trustees asserted the right claimed here by the Attorney General for the public.

Manifestly this rule or exception rests upon the fact that the part of the trustees who are the complainants in such case have brought the suit in the exercise of their trust, asserting the rights of the beneficiaries, or for the protection of the trust property, and are acting in harmony with the asserted rights of the *cestuis que trust,* and may, therefore, justly be said to represent them.    Upon this ground *Monill* v. *Lawson, supra,* rests, and is justified.    The suit there being brought by a trustee or trustees asserting the rights of the *cestuis que trust,* none of the *cestuis que trust* were necessary parties, and, therefore, the Attorney General, in such case, was not a necessary party.    So in the class of cases to which this rule applies, there is undoubtedly "a difference" in this regard (as stated in Daniell and in the other authorities cited,) between cases where there are trustees appointed by the donor and where no trustees are appointed, as, in the latter cases, the Attorney General must always be a party, as well as all other beneficiaries to be affected by the decree. This rule or exception does not apply to the case before the court.    It only applies when the trustees themselves, or some of them, are seeking to enforce the trust or the perform- ance of the duty, and, therefore, are acting for the *cestuis que trust,* while in the case at bar all the trustees deny the rights claimed by the *cestuis que trust,* and are resisting their enforcement, and all deny that the alleged duty is imposed upon them.    The difference between the case of trustees enforcing the trust against co-trustees or strangers, and that of trustees resisting a bill by the *cestuis que trust* against them- selves, for the enforcement of a trust and the performance of a duty which they refuse to perform, seems too apparent for argument.

The authorities relied on for appellees do not apply to the case at bar; but if they could be regarded as sustaining the broad proposition asserted, that where there are trustees for a charity the Attorney General is not an indispensable party

in such a suit as this, they would be clearly opposed to the many authorities already mentioned, and should yield to their weight, and the fundamental principles on which they rest. In *Jackson* v. *Phillips*, 14 Allen, 539, there were trustees of a charity who were made defendants, but the court ordered the Attorney General also to be made a defendant. The court said: "This duty of maintaining the rights of the public, and of a number of persons too indefinite to vindicate their own, has vested in the commonwealth, and is exercised here, as in England, through the Attorney General. It is upon this ground that in a suit instituted by the trustees of a charity to obtain the instructions of the court, the Attorney General should be made a party defendant, as he has been by the order of the court in this case." So in *Chamberlain* v. *Stearns*, 111 Mass. 267, the trustees of a charity were the complainants. The court ordered the Attorney General to be made a defendant. So in *Society* v. *Society*, 55 N. H. 463, property was conveyed in trust for charitable purposes. On a bill filed by one of the beneficiaries against the trustees, it was held that the Attorney General was a necessary party. The court said: "The Attorney General should have been made a party, either plaintiff or defendant. It is obvious that the subject matter of this suit being a public charity, no final and *conclusive* settlement can be made unless the State should be represented." And in *Cook* v. *Duckenfield*, 2 Atkins, 562, on a bill filed by the heir at law against the trustees, who were directed by the will to dispose of the personal estate for certain charitable purposes, the court said: "The bill must be amended, and the Attorney General, in behalf of the charity, must be made a party." So in *Kirkbank* v. *Hudson*, 7 Price, 212, and *Wellbeloved* v. *Jones*, 1 Sim. & Stu. 40, there were trustees for the charities, and in both cases it was ordered that the Attorney General be made a party. The case of *Female Association* v. *Beekman*, 21 Barb. 565, is also cited at length for appellees. This very case, so far

from sustaining the position of appellees, illustrates and recognizes the plain distinction here pointed out. The court expressly holds, that where a suit is brought *against the trustees* to enforce the trusts, the *cestuis que trust* must be parties, saying: "As *against the trustee* himself, the suit can *only* be maintained by the *cestuis que trust.*" And that where the trust is for a public charity, the Attorney General, "as representative of the public, would occupy the relation of *cestui que trust* to the trustee," within the meaning of the rule. Such is clearly the case at bar. In the case cited the court recognize two classes of cases in which the trustee could be regarded as representing the *cestuis que trust:* First, when the trustee has brought suit against *a third person to enforce the trust*; second, when the heir or next of kin has brought suit against the trustee *to avoid* the trust, and the trustee *is defending the trust.* Manifestly the case now being considered belongs to neither of these two classes.

In *Gaytes* v. *Franklin Savings Bank*, 85 Ill. 256, a decree had been rendered against a trustee in the absence of the *cestuis que trust.* On a bill filed to review the decree, the court held that the *cestui que trust* was a necessary party, and *set the decree aside.* The court said: "Nothing appears in the bill in the original case to take it out of the general rule that all parties whose interest would be affected by the decree should be parties to the bill, otherwise they can not be concluded by any action of the court. Before any one is concluded by judicial sentence, he must have his day in court. When no such opportunity is afforded any one aggrieved, if application is made within a reasonable time he may have such decree against him *set aside*, upon terms that shall be considered equitable, and let in to make his defence to the cause as if he had been made a party defendant. When that is done, all rights of *the respective parties* may be fully *investigated* and determined." In *Hopkins* v. *Roseclare Lead Co.* 72 Ill. 377, the court say: "It is the duty of the

complainant to see and know that he has before the court all
necessary parties, or his decree will *not be binding,*" See,
also, *Scott* v. *Bennett,* 1 Gilm. 646 ; *McCall* v. *Lesher,* 2 id.
46 ; *Leitze* v. *Clabaugh,* 59 Ill. 136 ; *Deniston* v. *Hoagland,*
67 id. 265 ; *Ridgeway* v. *Underwood,* id. 421. It is funda-
mental that to make a matter *res judicata* there must be a
concurrence of these four conditions, viz*:* Identity of subject
matter, identity of cause of action, identity of parties, and
identity of the quality or capacity in which the parties sue
or defend. Freeman on Judgments, sec. 252 ; 2 Bouvier's
Law Dict. 467.

A party who was not before the court at the former hear-
ing is here now asking to be heard. Never having had his
day in court he ought to be heard. It can make no differ-
ence that the Attorney General having been properly brought
into the case, is seeking to assert his rights by answer and
cross-bill in this cause, instead of by the filing an original
bill and instituting a new suit. If he was a necessary party
to the cause, the principle of public policy, (which requires
all necessary parties to be before the court, and in pursuance
of which the courts have repeatedly refused to proceed in
their absence,) justified the court below in ordering that the
Attorney General be made a party and allowed to assert his
rights in the pending litigation ; and being now for the first
time before the court, he must be heard, if heard at all, the
same as if the decision rendered in his absence had not been
made. If made a party it is to give him an opportunity to
be heard, and not to fasten upon him a decision which other-
wise would not conclude his rights, while to compel him to
resort to the circuity of another suit in the nature of a bill
of review would be contrary to the settled policy of this court,
which ever is to avoid multiplicity of suits, and, if possible,
to settle in one suit the rights and duties of all parties.

The doctrine of *stare decisis* can not be supported by the
ruling of the court in only one case, unless the law then laid

down has become an element of subsequent contracts, or a rule of property under which intervening rights have come into existence. *Stevens* v. *Pratt,* 101 Ill. 206; *Powers* v. *Green,* 14 Ill. 386; *Frink* v. *Darst,* 14 Ill. 304; *Mallett* v. *Butcher,* 41 id. 383; *Butler* v. *VanWyke,* 1 Hill, 461; *Pratt* v. *Brown,* 3 Wis. 532; *Leavitt* v. *Blatchford,* 17 N. Y. 533. See, also, 1 S. & M. 371; 48 Cal. 493; 23 Pa. St. 471; 6 Ohio St. 78; L. R. 11 Ch. Div. 579; Wells on Res Judicata, pp. 544, 550.

Mr. Justice Craig, also dissenting.