(No. 12614.—Reversed and remanded.)
THE NORTHWESTERN UNIVERSITY, Appellant, *vs.* THE
WESLEY MEMORIAL HOSPITAL, Appellee.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. CHARITIES—*what is a charitable trust.* A charitable trust is
a trust created for the purpose of carrying out one or more of the
objects of a gift to charitable uses.

2. SAME—*when a conveyance between charitable corporations
does not give rise to enforcible charitable trust.* Where one char-
itable corporation makes a conveyance to another for the sole pur-
pose of better enabling the donor to carry out one of its corporate
purposes, the mere fact that both corporations are charitable does
not give rise to such a charitable trust as a court of chancery will
enforce, and where the deed contains conditions subsequent a court
of chancery will not enforce a forfeiture for their breach.

3. SAME—*charitable corporation cannot donate its funds except
to carry out purpose for which it was created.* A charitable corpo-
ration is created by law for a definite purpose, and it cannot donate
its funds to another corporation organized for a similar or other
purpose, except to aid in carrying out the purpose for which the
donor corporation was created.

4. SAME—*gift does not revert to donor for abuse of trust except
by express condition.* If the trustees of a charity abuse the trust,
mis-employ the charity fund or commit a breach of the trust, the
property does not revert to the donor or his heirs or legal represen-
tative unless there is an express condition of the gift that it shall
so revert.

5. SAME—*when equity will enforce obligations of gift to char-
itable corporation.* Where a gift is made to a charitable corpora-
tion imposing obligations upon the donee without any condition of
reverter, equity has jurisdiction to enforce the continuing obliga-
tion; and where there is a gift to one charitable corporation im-
posing conditions for the benefit of another similar corporation,
equity will enforce the mutual obligations, at the suit of either
party, in accordance with the terms of the trust.

6. SAME—*when Attorney General is not a necessary party.* In
a suit to enforce the obligations of a charitable trust which is pub-
lic in its nature the Attorney General is a necessary party, where
the parties having charge of the fund unite in abuses of their trust
and there is no one who has a right to sue in his own name, but
not where the gift is to one of two charitable corporations for the

benefit of the other, which is to a certain extent charged with the administration of the trust and is seeking by its bill to be allowed to discharge the duties imposed upon it as well as to enforce the obligations of the donee.

7. DEEDS—*when provision in deed is a condition subsequent and not a covenant.* In case of doubt as to whether a certain provision in a deed is a condition or a covenant it will be construed to be a covenant to prevent the destruction of the estate, but where the deed expressly provides for a reverter upon failure to comply with the condition, the conveyance is one upon condition subsequent.

8. SAME—*equity will enforce a covenant though it will not declare a forfeiture for breach of condition.* A covenant differs from a condition in that in a proper case a court of chancery may enforce the specific performance of the former where it would not enforce the latter because to do so would work a forfeiture of the estate.

9. SAME—*provision in deed for appointing medical staff of hospital construed.* In a deed from an educational corporation to a hospital corporation, a provision that the "staff of the hospital" shall be drawn from the faculty of the grantor's medical school is mandatory and not optional and means the entire hospital staff.

10. PLEADING—*whether bill is multifarious depends on circumstances.* There is no inflexible rule for determining whether or not a bill is multifarious and each case must be determined largely upon its own facts.

11. SAME—*several matters may be joined in one bill to prevent multiplicity of suits.* A court of equity will allow great latitude in joining several matters in one bill when all grow out of the same transaction and all parties are interested alike in the same right and seek the same character of relief, and the mere fact that two or more matters are joined in one bill to prevent a multiplicity of suits does not render the bill multifarious.

APPEAL from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

MERRICK & MERRICK, and WHITMAN & MILLER, (JOHN S. MILLER, GEORGE P. MERRICK, and RUSSELL WHITMAN, of counsel,) for appellant.

N. M. JONES, ARCHIBALD CATTELL, and E. ALLEN FROST, (CHYTRAUS, HEALY & FROST, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county dismissing on demurrer, for want of jurisdiction and for want of equity, an amended and engrossed bill filed by the Northwestern University, appellant, against the Wesley Memorial Hospital, appellee, and James Deering.

The controversy grows out of the construction to be placed upon certain provisions in two deeds establishing trust relations between the parties. On June 30, 1899, appellant conveyed to appellee lots 25 to 33, inclusive, in block 11, in Uhlich & Muhlke's addition to the city of Chicago, valued at from $20,000 to $25,000. The consideration stated in the deed is one dollar and other good and valuable considerations. The deed contained this further provision: "This conveyance is made upon the express condition that said Wesley Hospital, the grantee herein, shall erect a hospital building on said lot within a reasonable time, costing not less than $150,000, and maintain and operate said hospital, and that the staff of the hospital be drawn from the faculties of the Northwestern University Medical School, and that facilities for clinic teaching be afforded the students of those schools in the wards and amphitheater of the hospital, as required by the grantor herein, and that on the failure of said Wesley Hospital to carry out these conditions the title shall revert to Northwestern University." Thereafter, between April, 1900, and May, 1901, appellant gave to appellee approximately $30,000 in cash to assist in constructing and equipping the hospital building. April 9, 1914, James Deering, son of a former president of the board of trustees of appellant, made a deed of gift conveying to appellee, in trust, securities valued at over $1,000,000. The deed provided, among other things, that the name of the hospital should be changed to Wesley Memorial Hospital; that the income from the property given should be used for charity work, and that any ac-

cumulation of interest might be used for erecting buildings or procuring appliances needed in the hospital charitable work. The deed further provided in its third and fourth paragraphs as follows:

"*Third*—It is my belief that the best hospital is the one that has close relations with a good medical school and the best medical school is the one that has close relations with a complete and well-conducted hospital. For this reason I desire the medical school of Northwestern University and Wesley Memorial Hospital to act in close and friendly relation with each other. To this end I specify that the president of Northwestern University, the dean of its medical department and an additional member of its board of trustees selected by its executive committee, all of whom shall also be members of such executive committee, shall always be members of the board of trustees of Wesley Memorial Hospital,—the additional member above specified to be one who can and will be active and attentive to the affairs of the university and the hospital. The duties and powers of the aforesaid dean, as a member of such executive committee, may be restricted to the relations between the university and the hospital. The three persons so specified also to be constituted, by a resolution or by-law adopted by the board of trustees of the university, a committee on relations between the university and the hospital. Also, the president of Wesley Memorial Hospital, its superintendent and an additional member of its board of trustees selected by the executive committee, all of whom shall also be members of such executive committee, shall also be members of the board of trustees of Northwestern University,—the additional member above specified to be one who can and will be active and attentive to the affairs of the university and the hospital. The three persons aforesaid to be constituted, by a resolution or by-law adopted by the board of trustees of the hospital, a committee on relations between the hospital and the university. These

two committees so selected from the university and the hospital, respectively, as aforesaid, shall meet together at least once each month for the discussion and consideration of the joint interest of the hospital and university, and the committee may decide all questions that arise, in so far as they are severally authorized so to do by their respective boards of trustees. If any member habitually neglects the meetings of said committee or is otherwise neglectful of the affairs of the university or hospital, he shall be removed from the committee by the executive committee appointing him and his place shall be supplied by another appointment.

"*Fourth*—Under this gift Wesley Memorial Hospital shall be a teaching hospital, and both in the charity work herein provided for and everywhere else in the hospital it shall give all proper teaching facilities consistent with the principle that the patient's welfare is the first consideration. The medical department must maintain and strictly enforce a high standard of preparatory studies for the admission of students. The medical school must provide an adequate staff for the hospital. It is my hope that the time will come when by mutual agreement between the school and the hospital an appointment to the faculty of the school will be an *ipso facto* appointment to the staff of the hospital, but I do not now insist upon this. I recognize that in a medical school and hospital united in work and sympathy and united physically the matter of a free dispensary and laboratories are of mutual interest. I am willing that a portion of the income from this endowment bearing the same relation to the total income of the medical school and the hospital shall be expended for the operation and conduct of such dispensary and laboratories, the school and hospital contributing to the expense on the same basis."

The deed further provided that the fund given should be held, managed and controlled by appellee, and that any question of interpretation of the gift, if not settled by the disagreeing parties, should be settled by arbitration, and

290 — 14

that the gift should take effect upon the acceptance of the same, on the conditions specified, by appellee, and upon appellant agreeing to all conditions relating to its co-operation and affiliation with appellee.

After setting forth the above facts the bill charges appellant is incorporated as an educational institution under the laws of this State for the purpose of establishing departments of study in all the arts and sciences; that in pursuance of its charter it maintains educational departments, including a school of liberal arts, a law school and a school of medicine; that the latter school is located at Dearborn and Twenty-fifth streets, in the city of Chicago; that appellee is a charitable hospital organized under the laws of this State for "the gratuitous treatment of the medical and surgical diseases of the sick poor" and is located in close proximity to the appellant's medical school; that until recently the two institutions maintained friendly relations and to all intents and purposes operated as affiliated institutions. The bill further charges that in order to successfully carry on a medical school it is necessary that its students not only be taught by text books, laboratories and lectures, but also that they have the opportunity of witnessing surgical operations and observing medical treatment in hospitals under expert physicians, called "bedside treatment," and in that way become familiar with the different diseases and their treatment; that all first-class medical schools are operated adjacent to hospitals, where such facilities are afforded; that the use of hospitals for this purpose has become very general in the United States, and that by reason of these considerations appellant made its deed and contributed to the cost of building and equipping appellee's hospital. The bill further charges that after a hospital was constructed on the property the board of trustees of appellee adopted the following resolution, viz.: "The executive committee is also empowered to make contracts with agents and employees, and to appoint annually the

medical staff of the hospital on the nomination of such staff to be annually made by Northwestern University, and they are empowered to fill vacancies in the same as they may arise, on similar nomination by Northwestern University," and that thereafter its hospital staff was selected from the faculty of appellant and bedside and clinic teaching furnished to the students of that institution; that in 1912 and 1913 serious differences arose between the two institutions through lack of funds from endowment and of profit in the operation of the hospital, and that appellee requested a modification of the condition to the end that all of its staff need not be drawn from appellant's faculty, because physicians not connected with appellant's faculty furnished more profitable patrons to the hospital, which request was denied by appellant. The bill further charges that thereupon appellee refused to comply with the condition in said deed and claimed that the condition therein did not mean all its staff must be selected from appellant's faculty, but only that appellee might select its staff from such faculty or otherwise, as it saw fit, and that its board of trustees adopted the following by-law, viz.: "The executive committee is also empowered to make contracts with agents and employees and to appoint the medical staff of the hospital, and they are empowered to fill vacancies in the same as they may arise;" that since the adoption of such by-law the executive committee of appellee has from time to time appointed and kept on its staff physicians and surgeons not nominated by appellant or drawn from its faculty, and has without the consent of appellant discharged from its medical staff physicians and surgeons nominated by appellant, and claims the right to appoint whomsoever it pleases to the medical staff of such hospital and in other ways has refused to observe the conditions and obligations of said deed. The bill further charges numerous conferences were had between representatives of the two institutions, without avail, until April 9, 1914, when James Deering made

his deed of gift aforesaid; that at the time the gift was made Deering was aware of the differences that had arisen between the two institutions; that his gift was made in view thereof and with the expectation that the increased income from his endowment would smooth over the difficulties and enable appellee without financial loss to carry on its charitable work and furnish the clinic teaching and facilities required by appellant; that the various conditions were inserted in the deed of gift for the purpose of re-establishing friendly relations between the two institutions, and that such gift created a charitable trust between the donor and the two institutions which should be enforced by a court of equity. The bill further charges that notwithstanding appellee accepted the munificent gift of Deering it has refused to comply with the conditions of both of said deeds, and has refused to select its medical staff from the faculty of appellant and to furnish its wards, amphitheater clinics and bedside teaching to the medical students of appellant and has refused such students access to its hospital wards and amphitheaters for the purpose of such teaching, by reason of which the appellant has been obliged to seek other hospitals and clinic services and to spend large sums of money for such clinic services. The bill further charges the acceptance of said gift by appellee upon the terms and conditions laid down and specified in said deed and that it agreed by resolution to be bound by and to carry out the terms and details mentioned therein; and the bill also charges that appellant, by reason of its affiliation and contractual relations with appellee, will derive many advantages and receive an adequate consideration for carrying out the conditions imposed by said deed upon appellant, and in consideration of these advantages agreed to the conditions relating to co-operation of appellant and appellee as in said deed expressed.

The prayer of the bill is for alternative relief. Appellant prays that without waiving the condition of its said

deed or any right it may have, either at law or equity, in the premises, the conditions of said deeds be construed and appellant's rights thereunder declared, and that the title to said land be declared to revert to appellant, or that appellee may be required by the mandatory injunction of the court to comply with the terms of the conditions in said deeds, and particularly that it be required to select its medical staff exclusively from the faculty of appellant and to furnish bedside teaching in its wards and amphitheater clinics to the students of appellant to the extent required by it, or that appellant be compensated for the land deeded, together with all sums of money paid or contributed to aid in the construction of the building and equipment of said hospital, and that it be relieved from the obligations imposed upon it by the deed of gift from said Deering to appellee and be discharged from all connection with appellee and that their mutual obligation be canceled, or that the court grant such other relief in the premises as equity may require.

Appellee filed its demurrer to the bill, which was sustained, as hereinbefore stated. Deering answered, admitting most of the material allegations of the bill, and in addition thereto filed his cross-bill, setting up substantially the same facts as were set forth in the original bill and praying substantially the same relief.

The first question presented is the construction of the deed from appellant to appellee and a determination of the rights of the parties under such deed. While the instrument recites a nominal consideration of one dollar and other valuable considerations, it is made upon the express condition that appellee shall construct a hospital building and maintain and operate the same, draw its hospital staff from the faculty of appellant's medical school and furnish facilities for clinic teaching of the students of that school, the last two conditions constituting the real and substantial consideration for the conveyance made. Appellant insists that

by reason of these provisions a charitable trust was created between it and appellee which a court of chancery has jurisdiction to enforce. On the other hand, appellee insists that no charitable trust was created but that the conveyance was one upon conditions, for a failure to comply with which a forfeiture of the property might be declared, but that a court of chancery is not the proper tribunal to decree a forfeiture.

A charity is "a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by creating or maintaining public buildings or by otherwise lessening the burdens of government," (*Congregational Sunday School and Publishing Society* v. *Board of Review, ante,* p. 108; *Crerar* v. *Williams,* 145 Ill. 625;) and a charitable trust would be one created for the purpose of carrying out one or more of these objects. While appellant and appellee are both, in a sense, charitable corporations and are working for the purpose of carrying out one or more of these charitable purposes, it does not follow that a contract or transaction had between them for the purpose of better enabling them to carry out the objects of their creation will give rise to a charitable trust which a court of chancery will enforce. A corporation of this character is created by law for a definite purpose, and it cannot donate its funds to another corporation organized for similar or other purposes, except that such donation assist to carry out the purpose for which such corporation was created. (*Gilman* v. *Hamilton,* 16 Ill. 225; *Board of Education* v. *Bakewell,* 122 id. 339.) In the case at bar appellant was organized for educational purposes, and property received by it is held in trust for that purpose and cannot be devoted to other purposes. The donation to appellee would not further the corporate purposes

of appellant unless made for the purpose of providing additional teaching facilities for appellant and can only be sustained upon the ground that it was so made. It is conceded that one of the best methods of conducting a medical school is to supplement the study of text books and lectures by the observation of actual bedside treatment of patients and surgical operations in a well conducted hospital. In other words, in order to successfully conduct a medical school it is necessary that the school have hospital facilities for affording its students opportunities to observe the actual treatment of patients under the care of skilled physicians. Appellant with this end in view made the conveyance in question to appellee, by which the latter undertook to erect and maintain a suitable hospital, to draw its medical staff from the faculty of appellant and to afford to the students of that institution opportunity for the observation of the actual treatment of patients in that hospital. The conveyance was in no sense one made for a charitable purpose, but, on the other hand, was one made solely for the purpose of better enabling appellant to carry out one of its corporate purposes, and as such did not give rise to a charitable trust between the two institutions.

Appellant contends that by reason of the charitable character of the two institutions the provisions of the deed may be construed to be covenants and not conditions, and as such may be enforced in a court of chancery. Appellee, on the other hand, contends,—and properly, we think,—that the provisions are conditions subsequent and that appellant is limited to the remedy provided in its deed, viz., a forfeiture of the property, and that a court of chancery is not the proper tribunal for enforcing such forfeiture. While there are cases construing conditions in instruments of conveyance as covenants, (*Associate Alumni* v. *General Theological Seminary,* 163 N. Y. 417; *Hoboken* v. *Hoboken,* 70 N. J. Eq. 630;) our attention has been called to no case in which a conveyance was made upon an express condi-

tion, with the further provision that for a failure to comply with such condition the title to the land should revert to the grantor, in which such condition has been held to be a covenant. The general rule, as stated in *Associate Alumni* v. *General Theological Seminary, supra,* is, if the trustees of a.charity abuse the trust, mis-employ the charity fund or commit a breach of the trust, the property does not revert to the heir or legal representative of the donor unless there is an express condition of the gift that it shall revert to the donor or his heirs in case the trust is abused. And in *Sanitary District* v. *Chicago Title and Trust Co.* 278 Ill. 529, we held that in case of doubt as to whether a certain provision in a deed is a condition or a covenant it will be construed to be a covenant to prevent the destruction of the estate, but that where there is an express stipulation for a forfeiture of the estate and its immediately vesting in the grantor, all doubt as to whether the provision is a covenant or condition is removed and the provision will be held to be a condition. In the case before us the deed provides for a reverter upon failure to comply with the condition in such deed, and the conveyance must be held to be one upon condition subsequent. A covenant differs from a condition in that in a proper case a court of chancery may enforce the specific performance of the former, while it will not of the latter for the reason that to do so would work a forfeiture of the estate, (*Sanitary District* v. *Chicago Title and Trust Co. supra,*) and a court of equity will not lend its aid to enforce a forfeiture. (*Douglas* v. *Union Mutual Life Ins. Co.* 127 Ill. 101; *Patterson* v. *Northern Trust Co.* 230 id. 334.) The case of *Brewster* v. *Lanyon Zinc Co.* 72 C. C. A. 213, (140 Fed. Rep. 801,) does not conflict with this view. In that case a forfeiture of an oil lease had been declared, and relief was sought only for the purpose of establishing, as a matter of record, that a forfeiture had been declared and of securing a cancellation of such lease as a cloud upon the title of the lessor.

It is further charged in the bill that between April, 1900, and May, 1901, appellant gave appellee, for the purpose of enabling it to comply with the conditions of the deed and to aid in constructing and equipping its hospital, the further sum of $30,000, and that at the time appellee received this money it knew the extent of appellant's powers and that it had no authority to devote any portion of its funds to any purpose other than its corporate purposes; that the sum so given was received with knowledge that it was given for the purpose of obtaining clinic facilities in such hospital for the students of appellant's medical school; that immediately after the hospital was constructed its staff was drawn from the faculty of appellant and opportunities afforded to the students of appellant's school for the observation of bedside and clinic treatment of patients in the wards and amphitheaters of the hospital, and that this relation continued until the disagreement arose as to the meaning of the provision in the deed that the "staff of the hospital be drawn from the faculty" of appellant, appellee contending that this provision did not require that all its staff should be drawn from such institution, but only that it was authorized so to do if it saw fit. Apparently the failure of the two institutions to agree as to the meaning of this provision has led to this litigation. When the language of the provision of the deed is read in the light of the situation of the parties at the time it was made, we think there can be no serious controversy as to its meaning. Appellant was desirous of securing additional facilities for bedside and clinic instruction of its students, and the evident purpose of the insertion of this clause in the deed was to insure that the students of that institution would receive their bedside and clinic teaching in the hospital under the guidance of members of the faculty of the school of which they were students. To this end it provided that "the staff of the hospital" should be drawn from the faculty of appellant's medical school, the word "staff" being used in its compre-

hensive sense and including all persons who should be selected as members of such staff. And such, indeed, was the construction placed upon this language by both the parties to this deed until this controversy arose. It is further charged in the bill that since the controversy over the construction to be given this deed has arisen, appellee has failed and refused to draw its hospital staff from the medical faculty of appellant or to afford to the students of that institution opportunities of observing the bedside treatment of patients in the wards and amphitheaters of the hospital, and that it persists in such refusal. The bill shows a clear violation of the condition of this deed and of the gift of $30,000, which was made in the expectation that appellee would furnish facilities for bedside and clinic teaching for the students of appellant's medical school so long as desired, and the latter gift, being made without any condition of reverter, created a continuing obligation which a court of equity has jurisdiction to enforce.

The next question presented is the rights of the parties under the reciprocal obligations imposed upon them by the Deering deed. By this deed he specifically provides that the income from the property conveyed shall be used for furthering the charitable work of the hospital and for procuring appliances needed in that character of work, and he places the burden of carrying out this trust upon appellant and appellee. He further recites that it is his belief that the best hospital is one that has close relations with a good medical school and that the best medical school is one that has close relations with a well conducted hospital. He endeavors to establish close and friendly relations between the two institutions by providing that the president of appellant, the dean of its medical department and one additional member of its board of trustees shall always be members of the board of trustees of appellee, and that the president of appellee, its superintendent and one additional member of its board of trustees shall always be members

of the board of trustees of appellant, and requires that these parties shall constitute a committee on friendly relations between the two institutions and shall be attentive to their affairs and shall meet at least once each month for the purpose of considering matters of mutual interest to the two institutions. He further provides that appellee shall be a teaching hospital, and both in its charity work and elsewhere in the hospital shall give all proper facilities for teaching consistent with the welfare of the patients. He provides for the operation and conducting of a free dispensary and laboratories by the joint action of the two institutions, using a portion of the income from his gift for that purpose. He requires the medical department to maintain and enforce a high standard of studies for the admission of students and to provide an adequate staff for the hospital, expressing the further hope that in time an appointment to the faculty of the school shall operate as an appointment to the staff of the hospital. He makes it a condition to this gift becoming operative that appellee accept the conditions imposed and that appellant agree to the conditions specified in this deed of gift. In other words, the joint action and agreement by both institutions are necessary before the gift becomes operative. At the time the gift was made Deering was deeply interested in the affairs of appellant and fully cognizant of the difficulties which had arisen between the two institutions with regard to the manner of the selection of the staff of the hospital and also of the embarrassed financial condition of appellee, occasioned, as appellee claimed, by the manner in which its staff was selected, and he was prompted to make the gift by a desire on his part to re-establish friendly relations between the two institutions and to provide appellee with funds with which to carry on its charitable work. This is evidenced by the numerous provisions inserted in the gift intended to accomplish that end and which could have been inserted therein for no other purpose. By his deed of gift Deer-

ing created a charitable trust under which each of the institutions was in a measure a beneficiary. Appellee received additional funds with which to carry on its charitable work, in consideration of which it was to become a teaching hospital and afford facilities for the purpose, and appellant was to be benefited to the extent that it was to be given facilities for bedside and clinic teaching in the hospital, in consideration of which it became bound "to provide an adequate staff" for the hospital. This meant a staff adequate for the needs of the hospital, and it clearly meant the entire staff. The obligations imposed upon each of these institutions by the gift were mutual and of such a character that either might maintain a bill against the other to enforce performance of the conditions of this gift in accordance with the terms of the trust. If on the hearing of this cause on its merits the proof sustains the allegations of the bill, the appellant is entitled to a mandatory injunction requiring appellee to comply with the terms of the conditions under which the gift of $30,000 and the gift under the Deering deed were accepted by appellee.

It is further contended the Attorney General is a necessary party to this action for the reason it is one involving a public trust. The case of *Newberry* v. *Blatchford,* 106 Ill. 584, is cited in support of this proposition. In that case the Attorney General had not been made a party to the original action concerning a public trust, and it was there pointed out that in bills asking the advice or direction of a court of equity as to the administration of a public charity, and especially where waste or mismanagement was apprehended or the decree would affect the interest of the *cestui que trust,* the Attorney General, or other public officer whose duty it is to have a care in such matters, is a proper party, either complainant or defendant. But such is not the rule where the charity is in the hands of a trustee charged by the donor specifically with its management for the *cestui que trust.* It is only where the parties having

charge of the fund unite in abuses of their trust and there is no one having a right to sue in his own name concerning it, that the Attorney General is a necessary party. In the suit before us one of the beneficiaries under the gift, which is to a certain extent charged with the administration of the trust, is seeking to be allowed to discharge the duties imposed upon it by the terms of the trust. For this reason the Attorney General is not a necessary although he would have been a proper party to this proceeding.

It is further contended that the demurrer was properly sustained for the reason that the bill is multifarious. This contention is based upon the fact that in one bill relief is asked under the provisions of the deed from appellant to appellee and the deed from Deering to appellee. No inflexible rule has been laid down for determining whether or not a bill is multifarious and each case must be determined largely upon its own facts. The aim of a court of equity is to administer complete relief in one suit and investigate and determine all matters which form the basis for the complainant's right to relief, and as a general rule the court will in a single suit investigate and determine all questions incidental to the main controversy and grant all relief incidental to the accomplishment of the main object of the bill. Courts of equity allow great liberality in joining several matters in one bill when all of the matters grow out of the same transaction and all parties are interested alike in the same right and the relief to be granted against each is of the same general character, and the mere fact that two or more matters are joined in the same bill to prevent a multiplicity of suits will in nowise prejudice the defendant and will not render the bill in chancery multifarious. (*King* v. *Rice,* 285 Ill. 123.) In this case appellant is seeking to establish its right to avail itself of the advantages of the use of appellee's hospital as a teaching hospital and to nominate the medical staff of such institution. It bases its right to do so upon the several transactions set out in

the bill, had with the appellee. As to each of these matters it seeks the same relief against the defendant. By joining all of these transactions in one suit a multiplicity of suits is avoided and adjudication of all matters incidental to that which constitutes the main matter of controversy in this case is accomplished in a single suit. No prejudice could result to appellee by having all of these matters joined in one suit and the rights of the parties thereunder adjudicated and in this way a multiplicity of suits avoided. In our opinion the bill, tested by the principles laid down in the authorities, is not multifarious.

The court erred in sustaining the demurrer to the bill. The decree is therefore reversed and the cause is remanded to the circuit court of Cook county, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*