## Thornton v. Koch et al., Appellants.

Argued September 25, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edward P. Doran,* for appellants.

*Robert W. Smith, Sr.,* with him *William G. Saul, Jr.,* and *Smith, Best & Horn,* for appellee.

OPINION BY MR. JUSTICE DREW, January 7, 1935:

The Benedictine Order has a chapter at Beatty, Pa., which conducts St. Vincent Monastery at that place. The property of the chapter is held and its business affairs carried on by The Benedictine Society, a corporation organized and existing under the laws of this Commonwealth and composed of the members of the chapter. The head of the chapter, its archabbot, is the chief executive officer of the corporation, and its procurator occupies the position and performs the duties of treasurer.

In the spring of 1925 plaintiff was desirous of benefiting the society in the disposition of her property. Not knowing how best to accomplish this purpose, she consulted Father Magnus Straten, a member of the society, who had long been a family friend. He brought the matter to the attention of the archabbot, the Right Reverend Aurelius Stehle, who suggested that she could transfer her property as hereinafter set forth. To this she agreed, and on or about May 4, 1925, she delivered to the archabbot United States treasury certificates of the face value of $25,000 and then executed two instruments, which recited the gift to him of sums of $7,000 and $18,000, respectively, the first to be used for the saying of masses after her death, for herself and her deceased relatives, and the second to be used "for three scholarships from the time of my death . . . for those of the monastery who are clerics in solemn vows, until they have finished their studies." The instruments provided that previous to her death she was to receive an annuity of five per cent on $25,000.

The evidence shows that on May 9, 1925, the archabbot and the treasurer of the society took these securities to the First National Bank of Latrobe and authorized their sale and the sending of the proceeds to the Catholic University of Peking, China, an institution established by the society. About three weeks later, plaintiff signed another paper, styled an "appendix" to the previous instruments, which recited that the archabbot was also the highest superior of the Catholic University of Peking, that it was advisable that he "be formally authorized to benefit our Benedictine Fathers in China" by plaintiff's gifts, and that plaintiff therefore authorized him "to apply her gifts to the best purpose and the greatest missionary merit, for Peking, China."

For a period of six years from July 1, 1925, plaintiff received payment of the stipulated annuity in semiannual installments, by checks signed by the treasurer or assistant treasurer of the society and drawn on the First National Bank of Latrobe. The installment of January 1, 1932, was not paid on that date. About six weeks thereafter a check signed by the treasurer of the Catholic University of Peking and drawn on the First National Bank of Latrobe was sent to plaintiff, who returned it, saying that she "had nothing to do with China." On June 15, 1932, she filed the bill in equity which is the foundation of this suit.

By her bill, plaintiff alleged that the writings executed May 4, 1925, were entered into by Archabbot Stehle as agent of the society, and that she was entitled to a decree against the society in the amount of the funds handed over by her to him, on two grounds, (1) that a power of revocation was intended to be included in the instruments, but was omitted by accident or mistake, and (2) that the society had defaulted in the payment of the annuity. After a hearing, the chancellor entered a decree nisi in accordance with the prayer of the bill. Exceptions filed by the society were dismissed by the court in banc, and from the final decree entered against it the so-

ciety appealed. The present archabbot, the Right Reverend Alfred Koch, who succeeded Archabbot Stehle upon the latter's death, was made a defendant, but no relief was sought against him, and by stipulation of counsel he was dropped from the case.

The court below apparently took the view that the instruments imposed. a contractual obligation on the society to pay the annuity, and that its failure to pay the one installment due when the bill was filed entitled plaintiff to rescind the contracts and get back the amount she paid. We do not share this opinion. On the contrary, we believe that the instruments created trusts, by which the society, as trustee, was bound to keep the funds intact, to keep them invested in securities proper for trusts, to pay therefrom plaintiff's annuity during her life, and to devote them to the specified purposes after her death. The instruments show that in the minds of all concerned the archabbot was acting as the representative of the society. In order that a trust may arise no particular form of words is necessary, if an intention to create a trust is manifested: Smith's Est., 144 Pa. 428; Eshbach's Est., 197 Pa. 153; see O'Connor v. Flick, 274 Pa. 521. Such an intention clearly appears from the instruments as a whole; the provisions show an intention to create a trust, to have the funds kept intact for the payment of the annuity during plaintiff's life and for the performance of the specified charities after her death.

There was a total want of proof that a power of revocation was intended to be included in the instruments but was omitted by accident or mistake, as alleged in the bill. However, the evidence does show a breach of trust on the part of the society in sending the trust funds to the Catholic University of Peking. Plaintiff did not agree that the funds should be sent to China for any purpose during her life. The paper signed by her, expressing her consent to the sending of the money there, did not state that this could be done in her life-

time, and inasmuch as it is silent on this most important question, and is only supplementary to the trust instruments, we are compelled to revert to those instruments, in which she specified that the funds were to be spent only after her death. The sending of them to China during her life, although done in good faith, was a breach of trust. The trustee could not give up the custody of the fund or permit it to be broken up or spent in her lifetime. This, however, does not entitle plaintiff to take back the trust funds; it only entitles her, as beneficiary, to have them restored to the trusts. The remedy for a breach of trust is not the revocation or termination of the trust but its enforcement: Associate Alumni v. General Theological Seminary, 163 N. Y. 417; Stewart v. Franchetti, 167 App. Div. (N. Y.) 541; Strong v. Doty, 32 Wis. 381; see Hamilton v. John C. Mercer Home, 228 Pa. 410; Toner's Est., 260 Pa. 49; Bridgeport Public Library v. Burroughs Home, 85 Conn. 309, 316; Northwestern Univ. v. Wesley Memorial Hospital, 290 Ill. 205, 216. To affirm the holding of the court below, that plaintiff is entitled to a return of the entire amount paid by her, would be to defeat the charitable trusts which she created, and to benefit her out of all proportion to the loss suffered by her. Full and exact justice, without harm or loss to anyone, can be done by requiring the trustee to pay to plaintiff the arrears of her annuity and to restore to the trusts the funds taken from them.

Plaintiff must be awarded the arrears of her annuity, with simple interest at the legal rate from the dates on which the payments in arrear were due, and the principal of the trust funds ($25,324, the amount realized from the sale of the certificates) must be restored in full to the trusts, with interest from the date of the breach to the date of restoration at such rate as shall be found by the court below to be just and proper under the evidence. Against the interest on the principal fund defendant is entitled to a proper credit for the annuity

payments heretofore made to plaintiff and for those ordered to be made to her. The restored funds must be invested in securities proper for trusts and kept within this jurisdiction.

The decree of the court below is reversed at the cost of appellant, The Benedictine Society, and the record is remitted for the entry of a decree in accordance with the views herein expressed and for such further proceedings as shall be necessary for the enforcement of that decree.