*In re* ESTATES OF DANIEL F. RICE *et al.*, Deceased.—(ARTHUR A. NOLAN, JR., Indiv. and as Co-Executor of the Estate of Ada L. Rice, Deceased, *et al.*, Appellants, *v.* DANIEL F. RICE, JR., *et al.*, Appellees.)—*In re* ESTATE OF ADA L. RICE, Deceased.—(ARTHUR A. NOLAN, JR., Indiv. and as Co-Executor of the Estate of Ada L. Rice, Deceased, Appellant, *v.* WILLIAM F. LINKUL, Appellee.)

Second District   Nos. 78-118, 78-387 cons.

Opinion filed October 24, 1979.

642

Michael J. Rovell, Kathleen Purcell, and Francis Krasnow, all of Jenner & Block, Eckhart, McSwain, Hassell & Silliman, Robert P. Howington, Jr., Barasa & Larkin, Francis J. Cuneo, McDermott, Will & Emery, Charles J. O'Laughlin, and William J. Scott, Attorney General, all of Chicago (Robert Tingler, Gregory G. Lawton, and Leonard Cahnmann, Assistant Attorneys General, of counsel), Robert H. Hupp and Lambert Ochsenschlager, both of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, Marvin A. Marder, of Highland Park, Donavan & Roberts, of Wheaton, Samuel H. Young, of Skokie, and Francis J. Cuneo, Jr., of Naperville, for appellants.

Louis G. Davidson and John B. Davidson, both of Louis G. Davidson & Associates, Sonnenschein, Carlin, Nath & Rosenthal, Wilson & McIlvaine, Howington, Elworth, Osswald, & Hough, and Harry G. Fins, all of Chicago, Hartman E. Stime, of Peregrine, Stime and Newman, of Wheaton, and William F. Linkul, of Glen Ellyn, *pro se*, for appellees.

James J. Costello, of Oak Lawn, and Morris Spector, of Chicago, no brief filed.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This opinion deals with two appeals as to the estates of Daniel F. Rice, Sr., and Ada L. Rice. Appeal No. 78-118 is from a February 2, 1978, order by which Judge Philip F. Locke removed Arthur F. Nolan (Nolan) as co-executor of Ada L. Rice's estate, appointed William Linkul (Linkul) to serve in Nolan's place as co-executor, and made a number of other findings relating to the disposition of property from both estates, including a ruling as to which of two competing groups were rightful directors of the Rice Foundation. The other appeal, No. 78-387, is from an award of $14,936.20 in fees given to Linkul for his services as a replacement co-executor. We are consolidating these appeals on our own motion due to their intimate factual connection.

Because of the complexity of the issues herein, a brief historical

overview of the Rice estates is necessary. It is to be noted that more than 29 attorneys or law firms participated in the two cases here involved. Daniel F. Rice, Sr., died on February 6, 1975, leaving an estate of over 70 million dollars. Mr. Rice left virtually his entire estate to two trusts, denominated Trust A and Trust B. Each trust received about one-half of his estate.

By means of Trust A, Mr. Rice left his widow Ada a beneficial interest in 50 percent of his assets and gave her a testamentary power of appointment over the corpus of Trust A. Trust B received the other half of the estate. Trust B, by the terms of Mr. Rice's will, is to expire on February 6, 1985. According to the terms of Mr. Rice's will, six named beneficiaries are to share each year, per stirpes, the first $80,000 of income from Trust B as follows:

2/16   Daniel F. Rice, Jr.
2/16   Florence Rice Bachrach, a niece, now deceased
3/16   Shirley Gillick Maginot, a sister
3/16   Patricia Gillick Nolan, a niece
3/16   Elizabeth Ann Gillick Palmer, a niece
3/16   Beatrice Rice Sheridan, a sister.

Any income earned by Trust B, over and above the $80,000, goes to the Rice Foundation. On February 5, 1985, upon the expiration of Trust B, the corpus of the trust is to be distributed to the beneficiaries, including the Rice Foundation, in the proportion that those beneficiaries share in the trust income immediately prior to the dissolution of the trust, *i.e.*, prior to February 5, 1985.

On December 30, 1975, Mrs. Rice, the Rice Foundation and the executors of her husband's will filed a will construction suit in the Circuit Court of Du Page County. In February 1976, Daniel F. Rice, Jr., filed a claim against his father's estate. Mrs. Rice died on April 11, 1977. By her will she exercised her power of appointment over Trust A in favor of the Rice Foundation and left Daniel F. Rice, Jr., an annuity interest in a $500,000 trust "in consideration of [his] agreeing to settlement of the claims involving my husband's estate and [his] agreeing to release me from any claims." Her will named Nolan and the Continental Bank and Trust Company of Illinois as co-executors of her estate. After his mother's death Daniel F. Rice, Jr., filed several law suits relating to the disposition of his parents' estates, including a petition on November 4, 1977, to set aside his mother's will.

In December 1977 a settlement was proposed by Judge Locke of the Circuit Court of Du Page County, by which the junior Mr. Rice would receive $5,000,000 tax-free from the estates of his parents. This settlement was approved by Daniel F. Rice, Jr., and by the executors of his mother's estate and of his father's estate. The directors of the Rice Foundation,

however, rejected the December settlement proposal, their stated reason being that it would have had severe adverse tax consequences for the estates. On December 16, 1977, during one of the settlement conferences, a question was raised orally by counsel for Daniel F. Rice, Jr., before Judge Locke regarding the composition of the Board of Directors of the Rice Foundation. Counsel for Daniel F. Rice, Jr., contended that the directors who were controlling the Rice Foundation in December 1977 (hereinafter known as the Nolan group) had "wrongfully acted as directors"; that certain bylaws giving the right to select a majority of directors to certain local medical institutions had been adopted in 1974 and that Nolan and the other directors had wilfully ignored those 1974 bylaws. On December 27, 1977, a lawsuit was filed in the Circuit Court of Cook County in which the directors of the Rice Foundation (the Nolan group) sought a judicial ruling on the proper composition of their Board.

Mr. Nolan's fitness to serve as executor of Ada Rice's estate was first placed in issue on December 29, 1977, when counsel for Daniel Rice, Jr., appearing before Judge Locke, presented a motion to have Nolan removed. This motion was not granted, apparently because it was not based on a verified petition. However, Judge Locke then issued a citation to remove Nolan as co-executor on his own motion, which is set forth below and was substantially the same as the motion submitted by counsel for Daniel F. Rice, Jr. Nolan filed a petition for a change of venue, asking that the cause be heard by another judge because of Nolan's belief that Judge Locke was prejudiced against him. This petition was filed prior to the return date on the citation and before any substantive rulings had been made in the citation proceeding. Nolan also moved for a more definite statement and for a postponement to allow him to conduct discovery. All three of these motions were denied by Judge Locke. Nolan also filed a motion to dismiss the citation, claiming that there was no conflict as a matter of law between his position as co-executor of Ada Rice's estate and his position with the Rice Foundation. Judge Locke took this motion under advisement and continued the hearing to January 24, 1978. In the meantime, on January 11, Judge Locke entered an order allowing certain medical institutions to file a petition in the probate proceeding seeking a ruling that the medical institutions had the right to select the board of directors of the Rice Foundation. No answers to this petition were due prior to February 3, 1978. Hearings were conducted on the citation to remove Nolan every day from January 24 through January 31, 1978. Witnesses were subpoenaed by Daniel F. Rice, Jr., and were called to the stand by counsel for Daniel F. Rice, Jr., who interrogated them on behalf of the court. The propriety of this procedure, as well as the other issues, will be discussed later in this opinion.

On February 2, 1978, Judge Locke entered an order which, *inter alia*,

removed Nolan, replaced him with Linkul, and held that the medical schools and not the Nolan group of directors should be controlling the Rice Foundation. The removal of Nolan was based on his allegedly conspiring to suppress the adoption of the 1974 amendments of the bylaws of the Foundation. Nine separate parties, including Nolan as executor and the Nolan group of directors, have appealed from this order, with Daniel F. Rice, Jr., four of the medical schools and Linkul filing briefs as appellees.

On May 11, 1978, Linkul appeared before Judge Teschner of the Circuit Court of Du Page County and filed a petition for $14,936.20 for his services as co-executor between February 2, 1978, and May 11, 1978, and for an additional sum of $27,514.90 as prospective fees. The petition for fees was presented to Judge Teschner for his *in camera* inspection. Unbelievably, counsel was not allowed to examine the petition or the alleged time expended by Linkul. As a matter of fact, the details of Linkul's petition for fees were not disclosed to opposing counsel until June 26, 1978, over a month after the fees were allowed without the opportunity of opposing counsel to examine Linkul as to the propriety of the fees, and no evidence as to the validity of the fees was presented by Linkul. Unbeknownst to those present before Judge Teschner, on the same day, May 11, 1978, this court issued an order staying the effect of Judge Locke's February 2, 1978, order, except as it removed Nolan as co-executor. We specifically ruled that the other co-executor, the Continental Bank, was to perform as sole executor until we had an opportunity to rule on this appeal. Linkul then withdrew his request for prospective fees. On May 18, 1978, Judge Teschner awarded Linkul the $14,936.20 he had requested a week earlier, and Nolan has appealed from this award.

In order to deal with the large number of specific issues raised by the parties, this opinion is divided into four broad sections, concerning:

I. Whether Nolan should have been removed as co-executor.

II. What, if any, fees should be awarded to Linkul.

III. Who are the proper and rightful directors of the Rice Foundation.

IV. Whether certain other findings made by Judge Locke in his order of February 2, 1978, should be reversed.

I
WHETHER ARTHUR A. NOLAN, THE CO-EXECUTOR, SHOULD HAVE BEEN REMOVED AS CO-EXECUTOR OF THE WILL OF ADA L. RICE

Under the general heading above the first issue which this court must concern itself with is whether the trial court erred in denying the change

of venue filed by Arthur A. Nolan, Jr., in the citation proceeding to remove him as executor. The facts surrounding this particular situation are as follows: Immediately after Daniel F. Rice, Jr., filed a citation to remove Nolan as an executor and before that petition was withdrawn and the court substituted its own citation, Nolan filed a motion for a change of venue, pursuant to the provisions of the Civil Practice Act relating to venue (Ill. Rev. Stat. 1977, ch. 110, par. 501(2).) That section states, in pertinent part, that:

> "A change of venue in any civil action may be had * * * (2) Where any party or his attorney fears that he will not receive a fair trial in the court in which the action is pending, because * * * the judge is prejudiced against him, or his attorney * * *."

It is Nolan's contention with regard to this issue that the citation to remove him as an executor was a "civil action" under the venue act. First, he relies upon section 23—3(a) of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 23—3(a)), which creates the procedure which must be followed to remove an executor. That section states that the citation "must be served and returned in the manner provided for summons in civil cases." Second, he relies upon the fact that the trial judge, Judge Locke, permitted attorney Charles J. O'Laughlin to represent Nolan in the removal proceeding while denying O'Laughlin leave to represent Nolan as to any other issue or matter. Third, Nolan contends that the proceeding arising from a citation to remove an executor satisfies the test of what is a "civil action" as set out in the case of *McPike v. McPike* (1882), 10 Ill. App. 332, 334, where the court stated that:

> "A civil action is one prosecuted for the establishment or recovery of a right, or the prevention of a wrong, or the redress of an injury."

In their arguments, the attorneys for Daniel F. Rice, Jr., contend that Nolan cannot raise the issue of the denial of the change of venue motion because he did not specifically raise it in his notice of appeal. In the alternative, they contend that the denial by the trial court of that motion was also proper as the trial court had already ruled on substantial issues in the probate of the estate of Ada Rice.

■■■ Our research has disclosed that it is a matter of first impression in this State whether a motion for a change of venue may lie in the case of a citation to remove an executor brought under sections 23—2 and 23—3 of the Probate Act. We have read the cases cited by Nolan with interest and concur with him that the right to a change of venue is absolute where the petition for such a change is filed in a timely manner, in proper form and in compliance with the statute. (*County of Du Page v. E & E Hauling, Inc.* (1977), 67 Ill. 2d 390, 368 N.E.2d 110.) We also concur with his statement of law that, if a motion for a change of venue is improperly denied, then

any further orders of the trial court with regard to that matter are void. (*Wheaton National Bank v. Aarvold* (1973), 16 Ill. App. 3d 193, 305 N.E.2d 541.) However, it is our considered opinion that he is incorrect in his view of the petition proceeding as a new or independent "civil action" in which a change of venue motion may be made, or indeed with his underlying presumption that he is a "party" who may avail himself of such a motion. In the absence of a clear statutory mandate allowing for such a motion in a proceeding to remove an executor, or, in the alternative, a clear directive from our supreme court, we hold that the law would be better served by not permitting such a motion to be filed in what is, at best, a supplementary proceeding. We must not lose sight of the fact that the real "civil action" before the court was the probate of the estate of Ada L. Rice. In any probate proceeding the sole duty of the court is to give effect, if possible, to the wishes of the testator as expressed in the will, or as implied by law. The court's primary responsibility is to the estate and not to the executors, heirs, or other purportedly interested individuals except as provided by law. Furthermore, the citation proceeding is obviously not an action for the establishment or recovery of a right or the prevention of a wrong, or for the redress of an injury to, from, or concerning Nolan. The sole issue before the trial court in any proceeding to remove an executor is whether that executor, who was specifically chosen by the testator, is legally disqualified from acting as the decedent's representative because of one of those causes set forth in section 23—2 of the Probate Act. This type of proceeding is therefore so intimately bound with the probate of the estate that the two cannot be severed and maintain the legal contiguity of this type of proceeding. It is for these reasons that we consider Nolan's contention with regard to change of venue to be without merit.

We now turn to the question of whether the trial court correctly followed the procedures set forth in section 23—3 of the Probate Act regarding the removal of an executor. That Act specifically requires that:

"(a) Before removing a representative *for any of the causes set forth in Section 23—2*, the court shall order a citation to issue directing the respondent to show cause why he should not be removed *for the cause stated in the citation.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 110½, par. 23—3(a).

The citation instituted on the court's own motion reads as follows: "On the Court's own motion, pursuant to the provisions of section 276, *et seq.*, of Chapter 3, Ill. Rev. Stat. (1975), YOU ARE COMMANDED to appear before the Honorable Philip F. Locke in Courtroom No. 204, DuPage County Courthouse, Wheaton, Illinois, on January 20, 1978, at 10:00 a.m., to show cause, if any you

have, why you should not be removed as co-executor of the will of Ada L. Rice, Deceased, due to one or more of the following facts, circumstances or allegations:

(a) that as a co-executor of the Estate of Ada L. Rice, Deceased, and as President and Chairman of the Board of Directors of the Rice Foundation, you are representing conflicting interests' that said conflicts or interest are irreconcilable and make it impossible for you to properly and fully discharge your fiduciary duties and responsibilities to the Estate of Ada L. Rice; that said conflicts of interest are apparent both from the records of this Court and of the U.S. District Court for the Northern District of Illinois, Eastern Division, and of the Fayette Circuit Court of Fayette County, Kentucky, all of which matters have been spread of record in the proceedings in this Court;

(b) that the Rice Foundation allegedly engaged in improper conduct by itself and through its agents and servants, in exerting undue influence upon Ada L. Rice, inducing her to exercise her power of appointment of Trust A under the Last Will and Testament of Daniel F. Rice, Deceased, in favor of the Rice Foundation;

(c) your failure and refusal, either as co-executor or Chairman and President of the Board of Directors of the Rice Foundation, to take any action directed toward determining the validity of the allegation concerning the appropriation and conversion of substantial assets of the Estate of Daniel F. Rice, Deceased, by Ada L. Rice;

(d) the allegations of wrongful conduct by you in respect of assets owned by Daniel F. Rice, Jr. and the wrongful withholding and commingling of the same with the assets of the Estate of Ada L. Rice."

Nolan contends that the citation did not give him adequate notice of the charges against him. We agree. Paragraph (a) of that document fails to give notice to Nolan of the specific statutory cause listed under section 23—3 as apparently required by the procedure set out in 23—3 above. We therefore find that paragraph (a) is procedurally defective and it was error to proceed upon it.

The other paragraphs of the citation, to-wit, (b), (c) and (d), were apparently abandoned by the court and those litigants seeking the removal of Nolan, and they are not relevant to this appeal. However, we must note that they are also procedurally defective since they do not recite any of the subsections of section 23—3 as cause for Nolan's removal.

It has been the law in this State for many years that the representative of an estate may be removed for the causes now enumerated in section 23—2 of the Probate Act of 1975. The early case of *Munroe v. People ex rel. Young* (1882), 102 Ill. 406, 410, stated:

> "These are the cases, and (so far as called to our attention) the only cases, wherein power is given by statute to the county court to remove an administrator and revoke and repeal his letters of administration. Until some one of the causes mentioned in the statute is placed before the court for action, the court has no power to act at all in this regard,—has no jurisdiction to act."

In a later case, the supreme court, in *Clark v. Patterson* (1905), 214 Ill. 533, 544, stated:

> "The legislature has not deemed it wise to confer on the courts unrestricted power to revoke letters of executorship, but has expressly declared the grounds on which such revocation may be ordered. It is only when one or more of such statutory causes are properly brought before the court for judicial action thereon that the courts have jurisdiction to revoke letters of administration or letters testamentary. * * * Some one or more of the causes enumerated in section 30 must, of course, be relied on as grounds for revocation as applied to this case." (Citing *Munroe.*)

This principle has been followed by the courts of this State uniformly.

This court, in *In re Estate of Abbott* (1976), 38 Ill. App. 3d 141, 347 N.E.2d 215, considered the situation where an executor was removed in light of the above pronouncements by the supreme court. In *Abbott* the executor failed to account for $33,500 of estate funds and failed to pay any attention to the business of the estate, relying upon his attorney to do so. We concluded under those circumstances the evidence disclosed nonfeasance on the part of the executor rather than malfeasance. We affirmed the removal of the executor by the trial court, holding no prejudice resulted in not stating the cause for removal in the citation in that he had been given reasonable notice of the hearing as to his removal, was given a fair opportunity to defend and that the proof was sufficient to clearly establish statutory grounds for removal.

That is not the situation in the instant case. Section (a) of the citation herein merely states that Nolan represented conflicting interests. In this regard the citation filed against Nolan is defective as a matter of substantive due process. Nowhere in the citation are any facts alleged which set forth the precise nature of the conflict of interest which was presumed to exist between Nolan's function as executor and his position as president and chairman of the board of trustees of the Rice Foundation. It frankly fails to allege facts sufficient for Nolan to prepare his defense. Therefore, even if the citation met the minimum

requirements of the Act, it is our opinion that it would be a nullity from a constitutional standpoint.

■■ Insofar as the actual hearing on the citation to remove Nolan as co-executor, we observe that the trial court totally ignored the law of this State which mandates that in the case of a citation to remove an executor a disinterested party should be appointed to represent the estate in such a proceeding. (*In re Estate of Oliver* (1974), 21 Ill. App. 3d 416, 315 N.E.2d 331.) In the instant case the record is clear that no such disinterested party was ever appointed, and we think that this was error.

■■ We also observe that during all of the proceedings on the citation the attorneys for Daniel F. Rice, Jr., acted, in essence, as prosecuting attorneys, doing a large portion of the questioning and, in fact, controlling the course of the proceeding. This course of conduct should not have been tolerated by the trial court as it thereby allowed an interested party to conduct an unfettered fishing expedition into the affairs of Nolan, the estate, and the other persons without any justification whatsoever. This was error.

■■ If this were not enough to warrant a reversal of the order removing Nolan as co-executor of the estate of Ada L. Rice, we must also point out that Nolan was deprived of his most basic rights to due process. First, evidence was adduced at the hearing concerning additional allegations which were not included in the citation, to-wit, that Nolan allegedly concealed or participated in a conspiracy to conceal the existence of a new or substitute Rice Foundation. Furthermore, whenever Nolan's attorney attempted to question the witnesses concerning this additional allegation, he was told specifically by the trial court that it had no relevance to the citation proceeding and his cross-examination was not permitted. Despite these statements by the trial court, the removal order recites that Mr. Nolan was to be removed for participating in a conspiracy to conceal the creation of a substitute Rice Foundation. No citation was ever filed against Nolan reciting these charges, and he was not given the opportunity to reply to them, to present evidence in his favor, or to cross-examine the witnesses that were presented. This deprivation of due process alone would be grounds for reversal.

Even though we have already determined that the citation proceeding was improperly instituted and tried, the circumstances of this case force us to also comment upon the merits of the citation. In short, we are convinced that no valid evidence was introduced to support the allegation of conflict of interest. Neither the court nor the attorneys for Daniel F. Rice, Jr., could articulate, at any point in the proceeding, any specific instance of conflict of interest involving Nolan nor could they, during the examination of Nolan as a witness, advance even a hypothetical situation of conflict of interest which would prejudice the

estate of Ada L. Rice. Therefore, Nolan should not have been removed for such a cause even if the court had proceeded with the procedural nicety which this type of situation should require. It is our opinion that even if the issue had been included in the citation, this record contains no competent evidence of any conspiracy involving Nolan which would warrant his removal as co-executor of the estate of Ada L. Rice, deceased.

## II
## WHAT, IF ANY, FEES SHOULD BE AWARDED TO LINKUL

■■ At the outset, consideration of the merits of this issue presents the question of whether, even if Nolan had been properly removed, a new co-executor should have been appointed. Section 6—12 of the Probate Act indicates that such an appointment should not have been made, stating that:

> "§6—12. Failure or refusal to qualify—Death, resignation or revocation of letters—Non-designation.) Unless otherwise provided by the will, * * * (b) *if one of several executors to whom letters have been issued dies or resigns or his letters are revoked, the remaining executor shall continue to administer the estate,* and (c) in either event the remaining executor has all powers vested in all the executors named in the will. If no executor is named in the will or the named executor fails or refuses to qualify and accept the office or, if after letters are issued the sole executor or all the named executors die or resign or their letters are revoked, letters shall be issued in accordance with the preferences in Section 9—3." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 110½, par. 6—12(b).)

Linkul argues that the above does not apply but that, instead, section 23—7 of the Act is controlling, which reads as follows:

> "§23—7. Appointment of successor.) Upon the death, resignation or removal of a representative, the court may appoint a successor." (Ill. Rev. Stat. 1977, ch. 110½, par. 23—7.)

When viewed in the context of the well-settled rule that potentially conflicting statutes must be read so as to give meaning to both, if possible, it is clear that section 6—12(b) controls the specific situation presented herein and that section 23—7 only controls cases where there is no other co-executor able or willing to serve, or when a guardian or other representative (excluding executors) is removed, dies or resigns. And even then, section 6—12(c) requires that the appointment of a successor be made in accordance with the preferences set forth in section 9—3. In the instant case Ada L. Rice's will named the Continental Bank and Nolan

as co-executors, and there is nothing in the record to indicate that the bank is unwilling or unable to carry out its responsibilities. Therefore, Linkul should not have been appointed at all.

■■ The next question is whether either the fact that Nolan's removal was improper, or the fact that a successor co-executor should not have been appointed in any case, should serve as a denial to any right Linkul might have to any fees, whether his appointment was only voidable and therefore valid until our stay order of May 11, 1978, or whether it was void *ab initio*. We hold that it was merely voidable not void, and that Linkul has a right to collect a reasonable fee for services actually rendered for the benefit of Ada Rice's estate. Judge Locke was a full circuit judge, with the appropriate jurisdiction over the probate of Ada L. Rice's will, and, in the absence of any evidence of bad faith, Linkul is entitled to rely on the judicial order appointing him. It is not the responsibility of someone appointed to this type of office to independently ascertain the merits of the removal of his predecessor or to question the statutory basis of his own appointment even if there is a pending appeal.

■■ The amount of the fees awarded Linkul, however, cannot be affirmed due to a number of problems with his petition and the evidence submitted in support of it. The procedure followed alone requires reversal. Although the petition for fees set forth Linkul's purportedly "reasonable" hourly rates, it failed to request any specific amount of fees or to present details of the work allegedly performed. At the hearing before Judge Teschner, Linkul orally asked for the specific sums mentioned and presented his time records to the court, *but only for its* in camera *inspection.* Because of this *in camera* submission, interested parties were precluded from examining or challenging them in the trial court. Moreover, no oral testimony was taken in support of Linkul's petition and therefore no opportunity arose for anyone to cross-examine him about his work for the estate. Nolan filed a notice of appeal from the May 18 award of fees on June 14, and not until June 26 did he finally receive a copy of Linkul's time records.

We are at a complete loss to understand why this *in camera* procedure was used. Linkul attempts to justify it by pointing to pending litigation involving the estate and Nolan and noting the interim nature of the fees requested. These arguments are without merit. It is inconceivable to this court that the trial court, when presented with a petition for executor's fees, would not allow interested parties to examine the same, would not allow examination of the purported work done by the executor, and then, when objected to, allow the fees requested without any testimony as to the merits of the same. Because of this *in camera* procedure, and due to Linkul's failure to testify, Nolan and other

interested parties were denied any meaningful opportunity to challenge the validity of Linkul's claim. This is a basic right that they must be given.

Because of these procedural defects in the award of fees to Linkul, there is no need for us to make any final rulings on the substantive justification for each portion of his request, and we will not do so. This is a matter best left to the trial court, as it will have the benefit of any comments or objections that Nolan and any other interested parties might care to make, along with, presumably, Linkul's presence in case any questions arise. We will, however, point out three areas of potential substantive difficulties that the trial court should consider on remand.

First, the nature of the work done by Linkul for the estate is not always clearly described by records submitted. Time is billed for "conferences" with particular parties or for "research," without any indication as to the subject of that conference or research. This is not per se improper; an executor cannot be expected to write down every detail of his calls or research. Moreover, questions as to somewhat vague entries may be susceptible to resolution by Linkul himself, using either other records or his memory. Our concern is not that each and every last minute of conversation or of research have its subject specified but that the court and the interested parties have some idea of what the larger time blocks were spent on and are presented with an accurate general picture of Linkul's work *for the estate*. We leave it to the trial court to balance the executor's right to be free from unnecessarily detailed record keeping and the rights of others, including the court, to know how the estate's money is being spent. See *In re Estate of Kottrasch* (1978), 63 Ill. App. 3d 370, 380 N.E.2d 26.

The second potential substantive difficulty with Linkul's petition is the fact that a large part of his time as co-executor appears to have been spent simply trying to insure that he would continue to hold that office. Again, we note that this is not per se improper; time spent to retain such a position is, at least in theory, time spent to indirectly benefit the estate. We are concerned, however, with the unusually large percentage of Linkul's time apparently spent in this manner. We think the trial court should consider the ratio of Linkul's time spent to keep his position to his time spent on matters of more direct benefit to the estate when considering both the hours spent and the rate at which Linkul should be remunerated. ■■ Finally, a number of items on Linkul's list, such as a $63 briefcase to carry records, legal pads, etc., were not properly chargeable to the estate and the court should not award Linkul "fees" to cover those items.

■■ It is to be noted that Linkul was appointed a *co-executor* and is entitled to only those fees for services performed by him as co-executor and should not be based on a percentage of the fees of the other co-executor.

We remand the question of Linkul's fees to the trial court for proceedings not inconsistent with this opinion.

## III
## WHO ARE THE PROPER AND RIGHTFUL DIRECTORS OF THE RICE FOUNDATION

■■ ■ We begin this section by taking judicial notice of the fact that there are presently pending two declaratory judgment actions, the first in the circuit court of Cook County and the second in the circuit court of Du Page County, which directly deal with this issue. The Cook County suit was filed after Judge Locke announced on December 23, 1977, that he had no jurisdiction over the board of directors of the Rice Foundation. Both of these actions are concerned with the status and the identity of the proper directors of the Daniel F. Rice Foundation. Because of the pendency of this appeal, it has not been determined which, if either, of these suits is the appropriate forum for the determination of who should properly control the Rice Foundation. It has been contended by the various medical schools and others during the course of this appeal that there is sufficient information in this record for this court to resolve this issue without resorting to other litigation, especially in light of the order of Judge Locke entered in February 1978, which declares that Daniel F. Rice did in fact alter the charter and bylaws of his foundation. We have examined the record, the briefs of all interested parties, and the applicable law and we reach the inescapable conclusion that this issue was not properly litigated in the court below and that any finding of the trial court with regard to this issue was, and is, void. Our opinion is based on the following factors. First, at no time in the court below was a declaratory judgment action ever invoked. (Ill. Rev. Stat. 1977, ch. 110, par. 57.1.) Second, the sole case or controversy before the trial court was the probate of the wills of Ada L. Rice and Daniel F. Rice, Sr., and, incidental thereto, the contest of her will by her adopted son, Daniel F. Rice, Jr., and the removal citation brought against her co-executor, Arthur A. Nolan, Jr. It is our opinion, therefore, that the issue of who should control the Rice Foundation was beyond the properly invoked jurisdiction of the circuit court of Du Page county in the instant case. That is not to say, however, that that court did not have the power to deal with such a question, but rather that the question had not been properly presented to the court in any form of recognized legal procedures. The law is well established in this country that courts do not exist to render advisory opinions except where required to do so by statute. Nor may they attempt to resolve controversies which have not been properly

presented to them for, if they should do so, it would violate not only the precepts of constitutional due process, but would fly in the face of our tradition of adversary litigation. The third factor which has influenced us is the fact that various parties who would be necessary to any valid litigation of the issue of the proper directors of the Rice Foundation had not received notice of the pendency of any action before the trial court below nor were they afforded the opportunity to present evidence or arguments concerning the issue of the organization of the Rice Foundation. For example, neither the executors of the estate of Daniel F. Rice, Sr., nor the individual directors of the Daniel F. Rice Foundation were made parties to this proceeding, nor were the medical schools made party to these proceedings prior to the entry of the court's final order of February 2, 1978. Further, Judge Locke stated several times during the proceedings that the composition of the board of directors of the Rice Foundation was not an issue before him. Based on these factors, we can only conclude that the consideration by the trial court of this issue was improper and its determination must be reversed.

## IV
## WHETHER CERTAIN OTHER FINDINGS MADE BY JUDGE LOCKE IN HIS ORDER OF FEBRUARY 2, 1978, SHOULD BE REVERSED

Judge Locke's order of February 2, 1978, contained certain findings which, although not directly related either to Nolan or to the alleged amendment of the Rice Foundation's articles and bylaws, could significantly affect the distribution of the assets of both estates and, thus, have been of great concern to several parties. Two of the more significant of these "other" findings are set forth in paragraphs 11 and 13 of this order. Paragraph 11 mentions an agreement between Daniel F. Rice, Sr., and his wife:

> "11. That the testator, Daniel F. Rice, executed his last will and testament in 1974, leaving the bulk of his estate to the Rice Foundation by dint of a provision in said will leaving income and remainder interests in a testamentary trust to Rice Foundation and of an agreement made with his wife, Ada L. Rice, prior to his death for the residue of a second testamentary trust, the marital trust, to go to Rice Foundation, subject to a power of appointment in his widow which she exercised to bequeath the remainder of said trust to the Rice Foundation."

If the comment in paragraph 11 concerning the existence of an agreement

between Daniel F. Rice, Sr., and Ada L. Rice as to how she was to use the power of appointment given her by his will is upheld, serious tax consequences to the estates could result.

Quite simply, there is no evidence in the record to support the finding of such an agreement. None of the pleadings raises any issue of such an agreement and none of the witnesses at the hearing testified that such an agreement existed. The appellees contend that the testimony of one Lee Freeman to the effect that Ada Rice told him that she intended to leave the remainder of her estate to the Rice Foundation as her husband intended was sufficient evidence to support the finding of an agreement. This contention is without merit. A mere statement by Mrs. Rice that she was going to dispose of the assets of her estate as her husband might have wished her to is in no way evidence of any agreement between them to do so. There was no evidence that Mr. Rice ever directly asked his wife to exercise her power of appointment in a particular fashion, much less that she agreed or promised to do so.

■■■■■ It is a basic rule of our judicial system that findings not supported by any evidence are a nullity and must be vacated by the reviewing court. (*Stowell v. Satorius* (1953), 413 Ill. 482, 109 N.E.2d 734.) Furthermore, Illinois courts do not favor oral agreements to make testamentary dispositions of property by will. Thus, claims of such agreements have been closely examined, and the alleged agreement viewed with more suspicion than is the case with most contracts. (*Monninger v. Koob* (1950), 405 Ill. 417, 91 N.E.2d 411.) Only clear, explicit and convincing evidence of the agreement itself and of its terms will support a finding of an agreement to make a testamentary disposition. (*In re Estate of Mueller* (1975), 26 Ill. App. 3d 163, 324 N.E.2d 674.) We therefore vacate the finding that there was an agreement by which Ada Rice was to bequeath certain assets to the Rice Foundation.

Paragraph 13 of Judge Locke's order is a bit more complex.

"13. That the bulk of the assets of the estate of Daniel F. Rice, deceased, and of the estate of Ada L. Rice, deceased, must pass to the Rice Foundation to carry out the intentions of the testators, *if the 1974 Bylaws are the Bylaws of the Rice Foundation and are in full force and effect; but that if the said 1974 Bylaws are for any reason held to be invalid and not the Bylaws of the Rice Foundation,* the said foundation is not a proper recipient as a remainderman of the assets of the estate of Daniel F. Rice, deceased, and of the assets of the estate of Ada L. Rice, deceased, because the purposes of the said foundation as set forth in later Bylaws purporting to have been adopted after 1974 do not represent the intentions of the testator, Daniel F. Rice, deceased, and because said foundation, prior to the adoption of said 1974

Bylaws and said 1974 Amendment to the Articles of Incorporation, was a sham corporation; and that *therefore, in the event the said 1974 Bylaws are hereafter held to be invalid, the* remainder of the estate of Daniel F. Rice, deceased and the remainder of the estate of Ada L. Rice, deceased, *must pass by intestacy and escheat to Daniel F. Rice, Jr.,* the only son and heir at law of the testators, to the extent the remainders of said estates would otherwise have gone to Rice Foundation." (Emphasis added.)

In essence, this paragraph states that if the trial court's findings which put the medical schools in control of the Rice Foundation are reversed, the monies earmarked for the Foundation will not go to the Rice Foundation controlled by the Nolan group but to Daniel F. Rice, Jr., by intestacy. There is no legal or factual basis in the record for this finding. The record indicates that all of these findings were submitted by counsel for Daniel F. Rice, Jr., and were adopted by the trial court substantially as submitted. If so, it represents only wishful thinking on the part of counsel; it is totally without basis in either fact or law and must be vacated. Both Mr. and Mrs. Rice gave certain property to the Foundation in their respective wills. There is no indication that they meant these gifts to be contingent on whether the certain purported bylaws of the Foundation were held to be validly adopted, and we will not write such a contingency into the wills.

Judge Locke's order of February 2, 1978, contains several other findings either irrelevant and unnecessary to a determination of Nolan's fitness as co-executor or not based on any facts in the record. Among them one pertains to a gift to Illinois Benedictine College and others concerning the "nature" of the pre-1974 Rice Foundation. Rather than discuss each of these findings separately and in detail, we hereby reverse each and every part of Judge Locke's order of February 2, 1978, not heretofore reversed in this opinion. That order is to be considered a nullity and neither its findings of fact nor of law are to be given any force in any proceeding in any court.

The order awarding co-executor's fees to Linkul is reversed and remanded with directions to the trial court to conduct a hearing on said petition for fees not inconsistent with this opinion. The order of the trial court entered February 2, 1978, is reversed in its entirety.

Reversed in part; reversed and remanded with directions in part.

SEIDENFELD and NASH, JJ., concur.