171 Ill. App.3d 916 (1988)
525 N.E.2d 1089
In re ESTATE OF ELINOR E. LAAS, Deceased (The People ex rel. Neil F. Hartigan, Attorney General of Illinois, Respondent-Appellant,
v.
Charles L. Martin et al., Petitioners-Appellees).
No. 87-3025.
Illinois Appellate Court  First District (2nd Division).
Opinion filed June 14, 1988.
*917 Neil F. Hartigan, Attorney General, of Springfield (Floyd D. Perkins and Matthew D. Shapiro, Assistant Attorneys General, of Chicago, of counsel), for appellant.
Daniel M. Schuyler and Carol M. Petersen, both of Schuyler, Roche & Zwirner, and Walter R. Baron, both of Chicago, for appellees.
Reversed and remanded.
PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
This is the second appeal involving the Elinor E. Laas estate in this court.[1] Respondent, the Illinois Attorney General (Attorney General), appeals from an order granting petitions for executor's and attorney fees and expenses payable from decedent's estate. The issue raised in this appeal is whether the circuit court erred in granting the fee petitions without conducting an evidentiary hearing, sought by the State, to determine the reasonableness of the amounts requested.
The facts and circumstances are set forth in greater detail in our earlier opinion. It is sufficient to note for purposes of this appeal that *918 on May 6, 1975, decedent Elinor Laas executed a will, later modified by the execution of a codicil on November 5, 1975. Decedent was adjudicated incompetent on January 28, 1976. She died June 16, 1983.
Charles L. Martin, who served as conservator of decedent's incompetent estate and was appointed executor of the estate upon decedent's death, on January 4, 1984, filed a complaint in the circuit court seeking construction of the will in order to establish a valid charitable remainder unitrust as prescribed by the will. The complaint named as defendants the beneficiaries under the will and codicil. The residuary legatee charities set forth in their answer a counterclaim against Martin as executor, Robert Laas, decedent's son and residuary lifetime income legatee, and the remaining legatees. The counterclaim requested construction of certain ambiguities in the will and further alleged that, if Martin's construction prevailed, the residuary gift to the charities set forth in the will would be lost. Martin and Laas successfully moved the court to dismiss the counterclaim and the charities appealed. This court affirmed the circuit court's order in In re Estate of Laas (1985), 134 Ill. App.3d at 512.
Pursuant to the supplemental proceedings described above, Martin retained the services of the law firm of Schuyler, Roche and Zwirner (Schuyler) in February 1984, to act as cocounsel to attorney Walter Baron (Baron) during the course of the litigation. Baron had worked as Martin's attorney "since the inception of the estate."
The law firm of Mayer, Brown and Platt (Mayer) acted as counsel for the charities during the supplemental proceedings. Robert Laas, in turn, hired attorney James Teborek (Teborek) to represent his interests in the probate of decedent's estate, including the supplemental proceedings.
Teborek filed with the court, on January 9, 1987, a petition and time sheets itemizing expenses and fees generated by the supplemental proceedings and other tasks associated with the probate of the estate from January 1984 through December 1986. The amount sought from the estate totalled $30,362.50.
Also on January 9, 1987, the charities filed a petition requesting from the estate $30,609 for fees and expenses incurred by Mayer in representing the charities from August 1983 through December 1986. Time sheets and the affidavit of Charles Newlin, a partner at Mayer, accompanied the petition.
On the same day, Martin, Schuyler and Baron similarly filed petitions and affidavits with the court, requesting: "at least" $125,000 in executor's fees for Martin; $165,632.27 in fees and expenses for Baron; fees of $170,000 for Schuyler; and an additional $2,629.95 for *919 expenses. Baron and Schuyler also submitted itemized time and expense sheets.
The charities filed responses to the petitions of Teborek, Martin, Baron and Schuyler on January 16, 1987, asserting that the payments requested were excessive and the result of duplicative, wasteful and unnecessary work. The charities asked the court to deny the petitions and conduct an evidentiary hearing to determine the appropriate compensation for each petitioner.
The Attorney General also filed responses on January 16, 1987, and January 21, 1987, contesting the fee and expenses petitions submitted by the charities, Martin, Schuyler, Baron and Teborek. Challenging compensation requested by Martin as excessive, the Attorney General suggested payment for Martin not to exceed $50,000. The Attorney General further found the executor's attorneys' time sheets indicated wasteful, duplicative and unjustifiable charges, and recommended a ceiling of $164,000 for fees and expenses for all attorneys representing Martin's interests. As to Teborek, the Attorney General maintained the attorney's total services should be valued at no more than $15,000 and that much of the work billed was duplicative; certain tasks for which Teborek sought compensation were not chargeable to the estate by a legatee attorney; and time expended on certain services and the charges for those services were excessive. The charities' fee petition, in turn, was attacked by the Attorney General for inadequate itemization of work performed and seeking payment for services not compensable by the estate.
Martin's responses to the charities' and Teborek's petitions were filed on January 20, 1987; questioned whether certain duties performed by each of the petitioners were properly compensable by decedent's estate; and asked that the court determine correct and adequate remuneration for Teborek and Mayer. On February 10, 1987, Teborek filed his response to Martin's, the charities' and Attorney General's responses, rebutting their arguments, and justifying the fees and expenses requested in his petition.
The parties appeared before the court on January 29, 1987, and July 15, 1987, in a continuing effort to resolve disputes concerning the fee petitions and other matters concerning estate administration and subsequently met for status calls. A proposed settlement agreement was drawn. On August 26, 1987, the Attorney General asserted that the interests of the people of Illinois and the contingent remaindermen under the will were inadequately protected by the agreement and sought a hearing to determine the reasonableness of the agreed fees and expenses.
*920 The charities responded that the possibility of the vesting of the contingent interests, or charities which would receive trust property should one of the existing charitable remaindermen cease to exist before Robert died, was "very remote." The circuit court agreed, conceding that, "if the [Attorney General] had a direct interest in [the proceedings], I would most assuredly give [him] a * * * hearing"; however, the court found the Attorney General's interest "extremely limited" and "really non-existent." The court further cited its obligation to "terminate and resolve litigation" and avoid incurring additional "time and expense" in the proceedings. Finally, it expressed concern as to what might happen if the Internal Revenue Service statute of limitations were exceeded.
The court entered orders approving the settlement agreement and the specific fee and expense requests contained therein. The Attorney General filed a notice of appeal on September 25, 1987, requesting reversal of the August 26, 1987, order granting Martin's, Schuyler's and Baron's fees and remandment of the cause with instructions that the court conduct a trial on the merits of those payments.

I
The Attorney General contends the circuit court erred in approving the fees without first conducting an evidentiary hearing to probe the reasonableness of the amounts requested.
 1, 2 The circuit court has broad discretionary powers in awarding executor and attorney fees (In re Estate of Halas (1987), 159 Ill. App.3d 818, 831, 512 N.E.2d 1276; In re Estate of Hall (1984), 127 Ill. App.3d 1031, 1035, 469 N.E.2d 378); nonetheless, interested parties to a probate proceeding must be given a "meaningful opportunity" to challenge the validity of fees requested for services to decedent's estate, including examination of and an ability to test the reasonableness of the fees. (In re Estates of Rice (1979), 77 Ill. App.3d 641, 654-55, 396 N.E.2d 298.) Under the Illinois Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110 1/2, par. 1-1 et seq.) an "interested party" in relation to any probate proceeding includes one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the proceedings. Ill. Rev. Stat. 1985, ch. 110 1/2, par. 1-2.11.
 3 The Attorney General has been recognized judicially as the proper representative of the State, which is itself regarded as the ultimate cestui que trust to any charitable bequest, in all actions concerning the enforcement or administration of a charitable trust. (Newberry v. Blatchford (1882), 106 Ill. 584, 595; Stowell v. Prentiss *921 (1926), 323 Ill. 309, 321, 154 N.E. 120; People ex rel. Hartigan v. National Anti-Drug Coalition (1984), 124 Ill. App.3d 269, 276, 464 N.E.2d 690; People ex rel. Scott v. George F. Harding Museum (1978), 58 Ill. App.3d 408, 413, 374 N.E.2d 756; Art Institute v. Castle (1956), 9 Ill. App.2d 473, 478, 133 N.E.2d 748; Kolin v. Leitch (1951), 343 Ill. App. 622, 627, 99 N.E.2d 685.) An exception is acknowledged where the trustee of the charitable trust is himself a party to the proceedings. (Newberry v. Blatchford, 106 Ill. at 595.) Decisions admitting this exception, however, also assert the Attorney General's right to interpose to preserve the trust fund where it appears "parties having charge" of the corpus "unite in an abuse of their trust, and there is no one having a right to sue in his own name concerning it, as is the case with regard to a public charity." (Northwestern University v. Wesley Memorial Hospital (1919), 290 Ill. 205, 221, 125 N.E. 13; Newberry v. Blatchford, 106 Ill. at 596; see also Kerner v. Thompson (1936), 365 Ill. 149, 153, 6 N.E.2d 131.) In that instance, the Attorney General's status transcends that merely of an interested or proper party to a necessary party. Northwestern University v. Wesley Memorial Hospital, 290 Ill. at 221.
 4 Ascertainment of the presence or absence of abuse or mismanagement of a trust fund frequently is dependent upon the production of evidence at a hearing before the court. Whether abuse or mismanagement in the present case can be found or is absent cannot be determined because the court refused to conduct a hearing on the reasonableness of the various fees requested. The Attorney General alleges waste of trust funds in the payment of these fees. As representative of the people of Illinois, he holds an interest sufficiently important to require that the fee demands be subjected to the scrutiny of an evidentiary hearing.
Evidently, the fee petitioners themselves recognized the need for the Attorney General's participation in these proceedings, having served him with a summons and complaint at the commencement of the supplemental proceedings. He responded by filing his appearance with the court. After having become a party, the Attorney General never sought to extract himself from the action, nor did any petitioner ever question, until the present appeal, whether the Attorney General was a proper party. Indeed, petitioners not only served him with notice and copies of virtually all accountings, pleadings and documents generated by the probate proceedings, but at no time raised any objection to his participation therein at any stage.
From the foregoing, it appears that the court erred in ruling that the Attorney General's interest was too remote to challenge the fee *922 agreement and denying the evidentiary hearing he demanded.

II
 5 The fee petitioners insist the Attorney General received sufficient opportunity to contest the agreement in proceedings below, making any further hearings unnecessary.
The parties appeared before the court at least six times to discuss, inter alia, the fee petitions and the settlement agreement; however, those present limited each appearance to argument concerning the petitions and the agreement and rearranging the pretrial calendar. No evidence was ever taken.
Absent the ability to cross-examine opponents and introduce evidence, it cannot be said that the court afforded the Attorney General a "meaningful opportunity" to challenge petitioners, nor can petitioners realistically argue that any evidentiary hearing occurred. See In re Estates of Rice, 77 Ill. App.3d at 654-55.

III
 6 Pointing to a recent amendment to section 24-2 of the Probate Act (Ill. Rev. Stat. 1985, ch. 110 1/2, par. 24-2; Pub. Act 85-994, eff. Jan. 5, 1988) and the determination of the Federal estate tax on decedent's estate, the fee petitioners assert that the question of the Attorney General's entitlement to an evidentiary hearing is moot and that the appeal involves no real controversy. Handley v. Unarco Industries, Inc. (1984), 124 Ill. App.3d 56, 69, 463 N.E.2d 1011; Kohan v. Rimland School for Autistic Children (1981), 102 Ill. App.3d 524, 527, 430 N.E.2d 139.
In the case sub judice, petitioners fail to persuade as to how controversy is absent. It is clear that the Attorney General and petitioners actively and vigorously disagree as to the proper remuneration for the executor and attorneys servicing the estate, and the Attorney General's right to demand an evidentiary hearing regarding those fees.
Furthermore, the argument that the IRS calculated estate taxes incapable of review or adjustment is meritless. At the August 26, 1987, hearing, both the court and the charities admitted the existence of IRS review procedures, available even after the statute of limitations for filing a tax return expires. The IRS code, moreover, contains mechanisms with which to challenge agency decisions. See 26 U.S.C.A. § 6511 (West Supp. 1988).
Finally, nothing in the recent amendment to the Probate Act is contrary to the foregoing conclusions. The amendment provides that *923 hearings concerning an estate representative's accountings to the court no longer require notice to estate beneficiaries where the trustee of their beneficial interests is an "interested person" as defined by the statute. (Pub. Act. 85-994, eff. Jan. 5, 1988.) The controversy at bar, however, arose not over the adequacy of Martin's accountings to the court, but rather over his fee petitions and similar petitions submitted by persons performing services for the estate. See, e.g., Norris v. Estate of Norris (1986), 143 Ill. App.3d 741, 493 N.E.2d 121; In re Estate of Neisewander (1985), 130 Ill. App.3d 1031, 474 N.E.2d 1378; In re Estate of Winston (1981), 99 Ill. App.3d 278, 425 N.E.2d 973.
For the foregoing reasons, we reverse the order of August 26, 1987, approving the executor and attorney fees of Martin, Schuyler and Baron and remand for further proceedings consistent with the views expressed in this opinion.
Reversed and remanded.
BILANDIC and SCARIANO, JJ., concur.
NOTES
[1] In re Estate of Laas (1985), 134 Ill. App.3d 504, 480 N.E.2d 1183.